*In the Matter of the Petition of* GEORGE N. HOLCOMB, *for a Writ of Habeas Corpus.*

1. ATTACHING UNDIVIDED TERRITORY *to Adjoining Judicial District; Powers of Legislature.* The act attaching territory on the western frontier, not as yet divided into counties, to an adjoining judicial district or county of such district, for judicial purposes, is within the general powers granted to the legislature, and not in conflict with any constitutional provision.

2. SECTION 10 OF BILL OF RIGHTS, *Construed.* The guaranty in section 10 of the bill of rights to an accused of a trial by a jury of the county or district in which the offense is charged to have been committed, must be construed as qualified by the power of attaching counties or undivided territory to a judicial district, and such attached counties or territory must be held to be a part of the district within the scope of said section 10.

3. SECTION 6, CH. 79, LAWS OF 1873, *Valid.* Section 6 of chapter 79 of the laws of 1873 is not rendered invalid by the constitutional provision in section 16, article 2, that "no bill shall contain more than one subject, which shall be clearly expressed in its title."

4. ———— Nor is said section 6 unconstitutional or invalid, because at the time of its passage the existing organization of Ford county was fraudulent and illegal, such existing organization having been by subsequent act of the legislature made valid and legal.

*Original Proceedings in Habeas Corpus.*

THE petition was filed in this court on the 14th of February, 1879, on behalf of *George N. Holcomb,* for a writ of *habeas corpus.* The petition set forth the following facts:

"That the said George N. Holcomb was wrongfully deprived and restrained of his liberty in the county jail of Ford county, at Dodge City, Kansas, by W. B. Masterson, sheriff of said county; that the cause of said restraint is believed to be a certain warrant of commitment, issued by the district court of Ford county, in default of bail in the sum of one thousand dollars to procure his attendance at the next term of said district court, to answer to the charge of having, on or about December, 1878, feloniously stolen and carried away certain cattle, the property of one La Fayette Ward, at the county of Foote, in the state of Kansas; said Foote county being described as a portion of that territory lying south of

the fourth standard parallel, and west of the counties of Hodgeman, Ford and Clark."

The petition further alleged, that the order of commitment under which *Holcomb* was held in custody was illegal, and did not authorize the restraint of the petitioner as aforesaid, for the following reasons:

"1st. That said order of commitment was issued by the judge of the district court in and for said Ford county, and that said court had no jurisdiction to try the said petitioner for said alleged offense.

"2d. That the county of Foote was never legally attached, for judicial purposes, to Ford county.

"3d. That the act of the legislature attempting to attach, for judicial purposes, to Ford county 'all that territory lying south of the fourth standard parallel' [and west of the counties of Hodgeman, Ford and Clark], is unconstitutional and void.

"4th. That the information filed against the petitioner charges that the property alleged to have been stolen was the property of one La Fayette Ward, and that the petitioner was never permitted to have a preliminary examination for said offense, and that he never waived such examination, and was examined only upon a warrant charging the felonious stealing of 'the property of one —— Ward,' and that he was never a fugitive from justice."

The usual prayer for the issuance of the writ was also annexed thereto. Upon such petition the writ of *habeas corpus* was issued by the court and made returnable on the 26th of February, 1879, and the same was duly served upon the said W. B. Masterson, sheriff. To this writ the sheriff duly made a return, in effect that he did not illegally restrain the said *George N. Holcomb* of his liberty, but that he held *Holcomb* in his custody in the jail of the county of Ford, for that a certain information had been filed in the district court of that county, charging the said *George N. Holcomb* with having committed the crime of grand larceny; a copy of the information, duly certified to, being attached to and made a part of the return to the writ herein; and further, that he was then holding and restraining *Holcomb* as aforesaid, in pursuance of an order or judgment of the district

*In re* Holcomb, *Petitioner, &c.*

court of that county, continuing the trial of the cause of the state of Kansas against the above-named *George N. Holcomb*, and requiring him to give bail in the sum of $1,000 for his appearance at the next term of the district court to answer the above charge, and in default of bail as aforesaid, to be committed to the jail of Ford county, a copy of said order or judgment, duly certified to, being attached to and made a part of the return to the writ aforesaid; and that *Holcomb* had never given or offered to give bail, as required by the order of the district court as aforesaid. The sheriff further stated in his return to the writ, that he was unable to appear in person, and to bring with him the said *George N. Holcomb*, before the supreme court, in the city of Topeka, Kansas, for the reason that he had not the money necessary to pay the expenses of travel between the jail of Ford county, Kansas, and the city of Topeka, etc.

On the 27th of February, 1879, the case was argued orally by Messrs. Nelson Adams and A. A. Hurd, for the petitioner *Holcomb*, and time was given counsel for the state to file briefs herein. April 25th, 1879, the opinion was filed.

*M. W. Sutton,* county attorney, *Willard Davis,* attorney general, and *H. B. Johnson,* for The State:

The provision of the constitution (art. 3, § 14) requires new judicial districts to be formed of compact territory, and bounded by county lines. It is claimed that this constitutional provision should be construed as prohibiting the legislature from placing within a judicial district any of the territory of the state not legally and constitutionally divided into counties; but we submit that this construction would harmonize neither with its spirit nor letter. The evident purpose of the provision was to prevent a county being divided, and a portion of it placed in one district and another portion in another. It is suggested that, as a matter of fact, a new county has, since the passage of the act of March 4, 1873, been created out of the unorganized territory placed in the ninth judicial district; a portion of which new county is

still left in this district, and a portion placed in some other. This suggestion is *dehors* the record, and not sustained by any proof; but if correct, the fault is with the subsequent act, and not with the one involved in this case. Besides, it has no application to Foote county. The act in question, by which the territory now embraced in Foote county was placed in the ninth judicial district, observed county lines where there were any, and therefore was in compliance with the spirit of the constitution; the territory not divided into counties, was not within the letter of the constitution. How can county lines be followed where there are none? We admit that this provision is mandatory, and that a statute dividing a county for judicial purposes would be, as to that particular county, unconstitutional; but the case presented here is not within its terms.

The title to the act is broad enough to embrace the provisions of the sixth section thereof, by which the territory in question was attached for judicial purposes to Ford county. The title is, "An act to define the boundaries of the ninth judicial district, and to fix the terms of court in the several counties thereof." The provisions of section six are evidently germane to and connected with the subject of the latter clause of this title. In order to fix the terms of court for the territory or place where the offense in question was committed, it was necessary, *first*, to create a court therefor; *second*, to designate the place where such court should be held; and, *third*, to prescribe the times the same should be held. This and nothing more is done by the act of March 4, 1873. By section two a court was established in Ford county, not only for the county of Ford, but as the legislature intended and provided, for all of the territory described in section one which had not been divided into counties. The next thing to be done was to fix the place where the court should be held for this unorganized territory. This was to be Ford county, where a court had been established by section two. In order to designate Ford county as the place

where the court should be held for this unorganized territory, it was necessary to attach this territory to Ford county. The provisions of section six attaching the same were therefore incidental and subordinate to, and directly connected with, the subject as expressed in the title. Then, by section ·7, the time of holding the court in Ford county was designated, and the object and purpose of the bill, to wit, to fix terms of court, was completed. The mischief to be remedied by the provision of the constitution, (art. 2, § 16,) and the construction that similar provisions of the constitutions of other states have received, are so well known that a mere reference to the leading cases upon the subject is deemed sufficient for the present argument: 42 Mo. 578; 44 Mo. 523; 45 Mo. 495; id. 528; 4 La. Ann. 298; 13 Mich. 494; 23 Mich. 385; 8 N. Y. 253; 2 Iowa, 282; 70 Ill. 388; 77 Pa. St. 77; id. 429; 9 Nev. 229; 60 Ill. 121; 46 Ala. 340; 6 Kas. 311; 15 Kas. 194.

The further suggestion is made, that this act of March 4, 1873, is invalid and inoperative in so far as it undertakes to attach this territory not divided into counties to the county of Ford for judicial purposes, because, according to the case of *State, &c., v. Comm'rs Ford Co.,* 12 Kas. 441, the county of Ford was not, at the time, legally organized; to which we reply: (1) Even if Ford county was not an organized county, the legislature had the power to establish a court therein, and attach this territory not divided into counties thereto for judicial purposes. Such legislation might fail of its purpose for want of officers to execute it, but it would not, for that reason, be unconstitutional. (2) If Ford county was not organized at the time of the passage of the act, so that the act could at once become operative and capable of practical execution, it would become so upon the organization of the county at any future time, and there is no suggestion or proof that Ford county is not now a duly-organized county. While it is very clear that these questions cannot legally be raised upon *habeas corpus,* (*In re Harris,* 47 Mo. 164,)

still, waiving this objection, we submit that the prisoner should be remanded on the merits of the case as presented by him.

The opinion of the court was delivered by

BREWER, J.: This is a petition for a writ of *habeas corpus.* The petition alleges that the plaintiff is restrained of his liberty by the sheriff of Ford county, under a warrant of commitment issued by the district court of Ford county, in default of bail in the sum of one thousand dollars, required by said court of plaintiff, to secure his attendance at the next term of said court, to answer to the charge of grand larceny; and avers that such restraint is illegal, because the offense was committed in Foote county, and that Foote county has never been legally attached to Ford county for judicial purposes, so as to give the district court of said last-mentioned county jurisdiction of the offense. The said sheriff produces the body of plaintiff in court, and makes return in due form of law, setting forth that he restrains said plaintiff under an information and order of court, both of which are attached to said return. Neither the facts stated in the return nor its formal sufficiency is controverted, but a motion is made to discharge the prisoner, notwithstanding the return, on the same grounds made in the petition.

By an act approved March 4, 1873, (Laws of 1873, ch. 79, § 1,) the ninth judicial district was made to embrace certain specified counties, "and all that portion of the state lying south of the fourth standard parallel and west of the counties of Hodgeman, Ford and Clark." This territory was not at that time divided up into counties, either organized or unorganized. By an act approved March 6, 1873, (Laws of 1873, ch. 72, § 13,) the unorganized county of Foote was created. The information shows that the offense for which the prisoner is held was committed in the unorganized county of Foote, and that this county was created out of territory placed in the ninth judicial district by the act of March 4, 1873.

The constitution provides (art. 3, § 14) that "judicial dis-

tricts shall be formed of compact territory and bounded by county lines." Doubtless the purpose of this was to prevent the division of a county, and the placing of a portion in one district and the remainder in another; so that argument may fairly be made that in the undivided territory beyond the limits of county lines the section is without force, and the legislature at liberty to divide that territory into judicial districts in any manner it may choose. Of course, that would end any question; but it may also be said, and we think it the better construction, that the effect of that provision is to limit the power of the legislature in the formation of judicial districts to the territory actually divided into counties. *Shall* be bounded by county lines, is the language. And it can hardly be that the existence of judicial districts and district courts was contemplated in the outside undivided territory. In other words, the district as a district is to be created and composed of existing counties. What effect does such construction have upon the first section of said ch. 79, that defining the boundaries of the ninth judicial district? Does it vitiate the entire organization of the district? We think not. The section reads that the district shall consist of certain named counties and the undivided territory. If the latter may not be included in any district, then the latter portion of the section may be dropped as nugatory and as surplusage, and the district will stand as composed solely of the counties named. We turn then to § 6 of the same act, which in terms attaches this undivided territory to the county of Ford for judicial purposes, and if this section is valid the jurisdiction of the district court of Ford county must be conceded. It is contended that the constitution does not authorize the attaching of undivided territory, but only of new or unorganized counties to judicial districts. (Art. 3, § 19.) It is true the constitution nowhere in terms authorizes the attaching of such territory, but it is also true that it nowhere directly or indirectly prohibits such attaching; and if there be no prohibition directly or by implication, then the act is within the general grant of legislative power. A large por-

tion of the state at the time of the framing of our constitution, consisted of undivided territory, and that the convention contemplated the existence of such territory without any power in the legislature to provide, through the machinery of courts and the processes of law, for the punishment of crime or the protection of life and property in such territory, is an imputation not to be tolerated. The continuance of such territory was believed to be temporary, and while provision was necessary in the organic instrument for all that was permanent and enduring, it was doubtless thought that the general grant of legislative power was sufficient for all the temporary necessities of the undivided and unoccupied territory. The grant of power to attach existing though unorganized counties to judicial districts, carries no implication of a denial of power to so attach undivided territory. There is nothing exclusive in such grant, *i. e.,* nothing excluding the exercise of similar power upon different objects, and under different conditions. It is not like the annexing of certain conditions to the exercise of a right, as in the qualifications of a voter, which by implication prohibits the legislature from attaching other and more burdensome conditions. As was said in the case of *Prouty v. Stover,* 11 Kas. 256: "To sustain an implied inhibition, the express provision must apply to the exact subject-matter, and the inhibition will not be extended further than is necessary to give full force to that provision." And surely the attaching of undivided territory to a judicial district in no manner interferes with, trenches upon, or affects the so attaching divided territory. Each may be done, and neither affects the other. But it is said that by § 10 of the bill of rights, an accused is entitled to a trial by a jury of the county or district in which the offense is alleged to have been committed, and that this guaranty is trespassed upon by sustaining the power to so attach. Attaching a county or territory to a district does not make it a part of the district. They are still separate and distinct, though united for certain pur-

poses. The guaranty of a trial by a jury of the county is not sustained by a mere legislative declaration that the county in which the offense was committed is attached to the county in which the prosecution is sought. If it were, then this valuable guaranty of personal right is at the mercy of any legislature, and a party committing an offense in Ford county may be prosecuted in Doniphan county, by simply enacting that the former is attached to the latter for judicial purposes. Waiving any inquiry into the effect upon such an act of the words, "the most convenient judicial district," in said § 19, we remark that the constitution must be so construed as to harmonize its various provisions. Section 19 authorizes the attaching of new or unorganized counties to a judicial district. Said § 10 guarantees a trial by a jury of the county or district. Now to attach a county for judicial purposes, to a district without any power in the district court, to try for an offense committed in such county, would be mere trifling. The power to attach for judicial purposes, carries with it by necessary implication full jurisdiction over the county or territory attached; and the guaranty in § 10 must be construed as limited by the power to attach, and the attached territory as a part of the district within the scope of said § 10.

Again, it is objected that the section is invalid by reason of that provision of § 16, art. 11, that "no bill shall contain more than one subject, which shall be clearly expressed in its title." But we think the matter of said section is not so foreign to the subject expressed in the title — which is "to define the boundaries of the ninth judicial district, and to fix the terms of court in the several counties thereof"— as to render that constitutional provision applicable. The section is one we might naturally expect to find under such a title. Its provisions are germane to and connected with the subject of the title; and whatever stress may be laid upon the words, "of the title," as referring strictly to only *territorial boundaries* and terms of court in *existing counties*, the subject-matter of this section is not so foreign to it as will justify us

in holding it invalid. Whatever question may arise as to any other county, the county of Foote is wholly within the territory named in said § 6.

A final objection is, that Ford county was not legally organized at the time of the passage of this act, the pretended organization having been by this court decided to be illegal and void, (*State v. Comm'rs of Ford Co.*, 12 Kas. 441,) and that therefore there was no district court in such county, and it was impossible for the legislature to attach any other county or territory to it for judicial purposes. To this it may be replied that there was an existing, though as decided an illegal and fraudulent organization, which was in 1874 legalized and made valid by act of the legislature. (Laws 1874, p. 8.) And further, that though the act establishing a district court in Ford county and attaching other territory to it for judicial purposes might not have been operative at once for lack of a valid county organization, yet it would become so whenever there was such an organization. There is no inherent vice in such legislation, but only suspended animation. The law is good, even though it amounts to nothing until the actual organization of the county.

We think therefore the petitioner is not entitled to his discharge, and must be remanded to the custody of the sheriff of Ford county; and it is so ordered.

All the Justices concurring.