THE STATE, *ex rel.*, v. THE BANKERS' AND MERCHANTS' MUTUAL BENEFIT ASSOCIATION.

1. SEC. 78, CH. 93, LAWS OF 1871, *Still in Force.* Chapter 112 of the laws of 1875, is entitled "An act to amend sections 2, 4, 17, 41 and 59 " of a prior act. It contains sections amending these five sections, and a further section purporting to amend section 78 of the original act — a section entirely separate and independent in its subject-matter from the five sections named in the title. *Held,* That as the legislature had selected a restrictive and limited title, the courts could neither enlarge nor amend it, and there being nothing in the title of said chapter 112 to suggest an intention of amending section 78 of the original law, that the attempted amendment failed by reason of section 16, article 2, of the constitution, and original section 78 is still in force.

2. ———— The defendant is, by the terms of its charter and constitution, an insurance company organized on the coöperative plan, and this characteristic of the company is not changed by the fact that it requires of each member a deposit as a guaranty of his payment of the assessments when made, and that it uses the interest on such deposit, and any forfeited deposits, in lieu of assessments, so far as possible.

*Original Proceedings in Quo Warranto.*

QUO WARRANTO, brought February 21, 1880, by the attorney general, challenging the right of the *Bankers' and Merchants' Mutual Benefit Association*, of Atchison, Kansas, to transact business in this state, and praying that the defendant be required to show by what warrant or authority it exercises certain rights and franchises, and that said association may be dissolved, etc. The nature of the action appears in the opinion. The defendant demurred to the petition, on grounds as follows:

1. That under the laws of this state the defendant association is not required to open books for subscriptions to its capital stock, nor is it required to have any capital stock whatever subscribed therein.

2. That the defendant is not required under the laws of this state to deposit with the treasurer of state the sum of $100,000, or any other sum whatever, either in money, bonds, notes, or deeds of trust; nor is it required to make any deposit

whatever in the office of the treasurer of state of any securities of any kind or nature.

3. That the defendant is not by law required to procure any certificate of such deposit from the superintendent of insurance of the state, nor is it by law required to procure any authority from said superintendent for it to commence the business proposed in the charter of the defendant association.

The opinion herein was filed March 31, 1880.

*Willard Davis,* attorney general, and *A. B. Jetmore,* for plaintiff.

*W. D. Webb,* and *A. F. Martin,* for defendant.

The opinion of the court was delivered by

BREWER, J.: This was an action of *quo warranto,* brought by the attorney general, challenging the right of defendant to transact business. The claim is, that defendant is carrying on the business of life insurance without authority therefor, and in conflict with the provisions of the law of 1871 creating the insurance department, and its several amendments.

The first question arises upon these facts: Sec. 78 of the law of 1871 (Laws 1871, p. 248) reads: "The provisions of this act shall not apply to life insurance companies organized on the coöperative plan." Sec. 6 of chap. 112, Laws 1875, p. 172, purports to amend this, and reads: "Section seventy-eight is hereby amended so as to read as follows: Section 78. The provisions of this act shall not be construed so as to prevent any Masonic, Odd Fellow, religious or benevolent society of this state from issuing indemnity to any one against loss by death of any of its members." The constitutionality of this latter section is denied, and the claim is that original section seventy-eight being still in force, by its terms excludes defendant from the operation of the insurance law. The ground of attack upon the amending section is a conflict with the first clause of section 16, of article 2 of the constitution, which provides that "no bill shall contain

more than one subject, which shall be clearly expressed in its title." Chap. 112 of the Laws of 1875 is entitled "An act to amend sections two, four, seventeen, forty-one and fifty-nine of an act entitled," etc., giving the title of the act of 1871. Nothing is said in the title about section 78, no intimation of any intent to amend that, and its subject-matter is entirely distinct from that of the five sections which are named in the title. That is, while the title names five, the act touches six sections. A certain subject is clearly expressed in the title, *i. e.*, the amendment of five specific sections. So far as the act follows the title, it is without question; but it goes beyond, and after doing all that its title intimates that it will do, it reaches out for something entirely separate and independent. Surely, if the title is to be an expression or suggestion of what the act contains, this title fails. And the title, it will be noticed, is not general and comprehensive, but particular and limited. Instead of being to amend the insurance law, under which general title an amendment of any section would be in order, it selects and names five sections which it proposes to amend. Could any title be more plainly limited than that? Would it by the remotest possibility suggest inquiry as to anything beyond those sections? It is true that the title is a matter of legislative selection, and that it could in this case have chosen one broad enough to include the challenged section, but it did not, and the courts have no more power to enlarge the title than to amend the law. As was said by the supreme court of Missouri in the case of *The City of St. Louis v. Tiebel*, 42 Mo. 592, "If the legislature has seen proper to make the title restrictive, the court has no authority, by mere construction, to enlarge it, or make it more comprehensive." (*Menwhertin v. Price*, 11 Ind. 199.) The constitution has said that the title must be an index to the law, and the courts may not sanction as a valid enactment any part of a statute to which the finger of the title does not point. If we should attempt to enlarge the title, we should defeat the very purpose of the constitutional prohibition, which was to make the title to a bill notice of all contemplated legislation.

It is said by Cooley, in his work on Constitutional Limitations, p. 149:

"As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded, because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title; they are vested with no dispensing power. The constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been more comprehensive, if in fact the legislature have not seen fit to make it so."

Our own state furnishes illustrations of titles broad and comprehensive, as well as of those limited and restrictive, some of which have come before this court for consideration. In *Bowman v. Cockrill*, 6 Kas. 311, the title was broad—"To provide for the assessment and collection of taxes;" and a statute of limitations included in the act was sustained, because designed to aid in the collection of taxes. So in *Prescott v. Beebe*, 17 Kas. 320, the title was, "To provide for the sale of school lands;" and a section declaring the lands taxable after the contract of purchase, was sustained as showing one of the terms of the sale. On the other hand, in *Comm'rs of Sedgwick Co. v. Bailey*, 13 Kas. 600, the limitation in the title was "defining the boundaries of counties;" and in the act, provisions for apportionment of indebtedness and collection of taxes were held outside the scope of the statute. So in *Swayze v. Britton*, 17 Kas. 625, under a title, "Concerning notaries public," a majority of this court held that a section changing the manner of serving notices of protest was invalid. See also *Division of Howard Co.*, 15 Kas. 195; *Davis v. Turner*, 21 Kas. 131; *In re Holcomb*, 21 Kas. 628; *The State v. Ewing*, 22 Kas. 708. We hold, therefore, that where the title specifically names five sections which it proposes to amend, an attempted amendment in the body of the law of a sixth section, entirely independent in its subject-matter, is outside the scope of the statute, and must fail.

Original § 78, of the law of 1871, having never been amended, is still in force, and is the law of the state.

We pass, therefore, to the second question, and that is, whether this is a "life insurance company organized on the coöperative plan." There is little difficulty in answering this question. The defendant corporation has no stock; it proposes no accumulation of assets out of which to pay losses; it holds no reserve. It simply collects an assessment from its members on occasion of a death, and pays the amount to the beneficiary. The purpose of the incorporation is stated in the second article of its charter:

"The object or purpose of this association shall be the creation of a fund, by making mutual pledges and giving valid obligations of its members to and with each other, for their own insurance from loss by death of its members; the preservation of the fund from mismanagement and loss, by the judicious investment of the same in registered bonds of the United States; and its equitable distribution among the families or designated beneficiaries of deceased members."

The sixth article also provides:

"This association shall have no capital stock; it shall insure no life except that of its own members; it shall receive no premiums, nor make any dividend; and the private property of its members shall be exempt from corporate debts."

That which distinguishes this from most coöperative insurance companies, is what is styled its guaranty fund. The corporation requires as a condition of membership, and at the time of joining, a deposit "of one dollar for each and every year of his age, counted at his nearest birthday, which deposit shall form a pledge or guaranty for the payment of assessments for death losses and annual dues." (Art. 1, § 4, of the Corp. Const.) But this fund is not a fund for the payment of losses, but a guaranty of the payment of assessments. Upon the death of a member, this guaranty deposit is paid to his beneficiary, and this in addition to and independent of the proceeds of the assessment. (Art. 3, § 1.) Upon a failure to pay his assessments, the deposit is forfeited to the company, and the interest received upon the investment of the deposit belongs to the company, and from these accumula-

tions there may come a fund, out of which the amount which would be due in case of a death can be paid without any assessment, and provision is made for such contingency. (Art. 2, §§ 3, 5; art. 3, § 2.) But this provision against a large accumulation of funds in no manner changes the character of the association. Its purpose and object is still the collection of assessments from living members, to pay the beneficiary of a deceased member. It is therefore an insurance company organized upon the coöperative plan, and exempt from the provisions of the law of 1871.

This disposes of this case, for chapter 115 of the Laws of 1879 purports to be simply supplemental to and amendatory of the original insurance law of 1871, and its provisions obviously have no bearing upon coöperative insurance companies. With the wisdom of allowing such coöperative insurance companies, and the policy of the legislature of the state concerning them, this court has nothing to do. That is a matter for legislative determination. It may allow any or forbid all. It has allowed coöperative insurance companies, of which the defendant is one, and until it orders otherwise, the defendant may continue its business.

The demurrer will be sustained, and judgment ordered for defendant.

VALENTINE, J., concurring.

HORTON, C. J., not sitting.