## LEE MUTUAL FIRE INSURANCE COMPANY *v.* THE STATE.

1. INDICTMENT. *Synonymous words. Surplusage.*

    The Lee Mutual Fire Insurance Association was indicted for exercising the privilege of a "fire insnrance company or association," without having first paid for and obtained license in accordance with sect. 85, Code 1880. A motion was made to quash the indictment on the ground that it was "vague and uncertain." *Held,* that the words, "association" and "company," as used in the indictment are synonymous, and that though the use of them was surplusage, it produced no uncertainty in the indictment.

2. CRIMINAL LAW. *Fire insurance company. Definition. Sect. 585, Code 1880.*

    When an association or company undertakes and promises in consideration of a a sum received and appropriated to their own use by its officers and members to give security or indemnity against loss by fire, it becomes a fire insurance company, and is liable to the privilege tax imposed by sect. 585 of Code 1880; notwithstanding it may be conducted upon the mutual co-operative plan, owning no property and accumulating no fund for the payment of its losses, but relying solely upon assessments upon its policy-holders to meet each successive loss, and obligating itself to pay only such amount as the assessments may yield.

APPEAL from the Circuit Court of Lee County.

Hon. J. W. BUCHANAN, Judge.

The Lee Mutual Fire Insurance Association was indicted " for, that it did exercise the privilege of a fire insurance company, or association * * * without having paid the price and obtained the license therefor, as required by the revenue laws of

the State.'' A motion was made to quash the indictment on the ground that it was vague and uncertain. The motion was overruled. On the trial the defendant proved that it was a corporation, conducted upon the mutual co-operative plan, owning no property, but relying solely upon assessments of its policy-holders to pay losses, and obligating itself to pay only such amounts as assessments might yield. It was also proved that fees and annual dues, amounting to a considerable sum, went to the officers of the association. The defendant was convicted and sentenced to pay the statutory fine of $2,000, and from the judgment of the court below it appealed to this court.

*W. P. & J. B. Harris*, for the appellant.

On the motion to quash the indictment in this case we suggest that there is no such thing known to the law as the privilege of '' a fire insurance association.'' The statute uses the term fire insurance company. It is the business of fire insurance on which a license tax is imposed. If the indictment had charged that the defendant exercised the privilege of a fire insurance association it would have been bad, and to describe the privilege, as being the privilege of a combination named in the statute, or of a combination not named, renders the charge bad for uncertainty. Again, we suggest that the indictment should have charged that the defendant did engage in the business of insuring against losses by fire. Again, the corporation, the artificial being, is not indictable under a statute which imposes imprisonment as a punishment. Although there is a general statutory rule of construction that the word person shall be held to mean artificial persons, yet the nature of the statute may confine it to natural persons. The act is capable of enforcement against the principal manager, or the directors, or other officers actually engaged. They are persons exercising the privilege.

Looking into the long list of taxed privileges, as they are styled, in sect. 585 of the Code, it is apparent that the Legislature aimed to impose the license tax on trades, pursuits, oc-

cupations and professions, followed or maintained with the object of making profit, — pecuniary gain. They are found to include almost the entire round of business pursuits by which men make a living, if we except what the statute excepts, agriculture and mechanical labor. They embrace those occupations of which Borroughs treats under the name of " privileges," and Cooley under the name of " business." Cooley, 385. The tax is as strictly a revenue tax as the license tax of the act of Congress of 1864. *License Tax Cases*, 5 Wall. 462.

The Constitution of Texas empowered the Legislature to impose a tax on " occupations, trades, and professions." The Legislature passed a law imposing a tax on " every person or firm keeping a billiard table." It was held that " occupations, trades, or professions," mentioned in the Constitution, embraced only those which were prosecuted for gain, and the Legislature could not go beyond that limit. *Tarde* v. *Beausman*, 31 Texas, 377.

The Knights of Honor, Knights of Pythias, etc., having the insurance feature, all keep the insurance feature by defraying expenses from fees, which are collected for no other purpose. The corporation does not insure. The compact between the members is the only contract.

*W. P. Harris*, argued the case orally.

*T. C. Catchings*, Attorney-General, for the State.

1. It is urged by counsel that the indictment should have been quashed, because the words, " an association," are used in the indictment. They may be treated as surplusage. The words " company " and " association " have the same meaning substantially, hence their being used together, as they are in the indictment, does not make the meaning of the averment at all different from what it would have been if the words, " an association," had not been inserted.

2. If the corporation proceeded against is a fire insurance company, it is subject to the statute, so that the only question to be determined is, whether or not it is a fire insurance company. All insurance companies, except the old-fashioned

joint stock companies, which it may be said no longer exist, raise their means by assessments on those holding policies. The only difference between the regular mutual companies and these so-called mutual, benefit, benevolent, poor concerns, is that the former make their assessments in the shape of premiums, which are kept invested until needed to pay a loss, while the latter make their assessments when the loss occurs. By the former method a fund is created, which, if prudently managed, secures prompt payment to the assured, and that without regard to the ever-varying number of policy-holders To secure this safely, the premium is fixed much higher than it would need to be if every member could always be relied on to remain a member, and to pay his premium punctually. But in both classes of companies the funds are raised by contributions from the policy-holders. However this may be, the concern is an insurance company. It insures property against loss by fire, and has no other object than to do an insurance business. That is the test, and not the method by which it raises its funds to meet its obligations. And these concerns are operated for profit. The annual dues, and the surplus from assessments, if such a company attains considerable size in point of membership, make a sum very much larger than is needed to defray its expenses, and this is appropriated by those who operate them. That such concerns are insurance companies is well settled by the authorities. *The State* v. *Bunker Ins. Co.* 23; Kan. 499. *Com. Assn.* v. *The People*, 90 Ill. 166; *The State* v. *Merchants Ins. Co.*, 72 Mo. 146. *Dorion* v. *Central Review* 7 Daly, 168.

CHALMERS, J., delivered the opinion of the court.

The motion to quash the indictment was properly overruled. The words " association " and " company " are synonymous in the sense here used, both meaning a number of persons banded together for a common business purpose. The use of one of the words was surplusage, but produced no ambiguity or uncertainty. By sect. 585 of the Code of 1880 a tax of $1,000 is imposed upon all fire insurance companies

and by sect. 589, a penalty of double this amount is imposed upon all companies transacting business without prepayment of the tax. That the defendant corporation was conducted upon the mutual co-operative plan, owning no property and accumulating no fund for the payment of its losses, but relying solely upon assessments upon its policy-holders to meet each successive loss, and obligating itself to pay only such amount as these assessments might yield, does not strip it of its character of an insurance company, the test is not the mode or manner in which it affords insurance, but whether it undertakes and promises, in consideration of a sum paid, to give security or indemnity against loss by fire, and this it certainly does. *The State* v. *Bunker Ins. Co.*, 23 Kan. 499, *The State* v. *Merchants' Ins. Co.*, 72 Mo. 146; *Comm.* v. *Wetherbee*, 105 Mass. 160.

It is argued, however, that it cannot be conceived that the law-giver intended to impose taxes upon, or raise revenue out of a business or enterprise carried on without expectation or desire for profit by anybody, the essential idea in all taxation imposed upon a calling or business being, that it is conducted for pecuniary profit, and the intention of the law being that out of that profit, or chance for profit, a certain sum shall be paid to the State.

The argument is plausible, but the facts of this case do not call for its decision. It is shown that by the by-laws of the corporation large fees were exacted from the assured, which, under the name annual dues and membership fees, would amount to large sums, if the enterprise prospered, and that these sums went not to the assured, nor to the payment of losses, but to the charter members or officers or managers of the institution, and undoubtedly the prospect of the profit thus to be realized had much to do with the organization and conduct of the corporation.

It is not true, therefore, that it is a concern from which those connected with it neither expect nor desire profit.

Affirmed.