No. 23,739.

THE KANSAS STATE BANK, *Appellant*, v. A. W. LAUGHLIN, *Appellee.*

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

BANKING ACT—*Statute Imposing "Double Liability" Upon Stockholders of Bank—Not Repealed by Constitutional Amendment.* The section of the banking act (Gen. Stat. 1915, § 523) providing that stockholders of a bank shall be additionally liable for a sum equal to the par value of the stock owned by each was not repealed by the amendment to section 2, article 12, of the constitution adopted in 1906, which provides that—

"Dues from corporations shall be secured by the individual liability of the stockholders to the amount of stock owned by each stockholder, and such other means as shall be provided by law," etc.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion on rehearing filed June 10, 1922. Former opinion reversed. (For original opinion of affirmance see 110 Kan. 559.)

*John L. Hunt,* of Topeka, and *B. I. Litowich,* of Salina, for the appellant.

*Frank T. Knittle, Ralph Knittle,* and *Thomas L. Bond,* all of Salina, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This controversy involves the effect of a constitutional amendment relating to the individual liability of stockholders upon a statute fixing the liability of stockholders in banking corporations, which was in force when the amendment was adopted.

The appeal, which was taken from a judgment holding that the amendment operated as a repeal of the statute, has had unusual attention. On the first hearing, the court, one justice not sitting, was equally divided on the question. A reargument of the case was therefore directed, and that hearing in which all the justices participated, resulted in a decision affirming the judgment of the district court, holding that the statute was repealed by the amendment. (*Bank v. Laughlin;* 110 Kan. 559.) Following that hearing an application for a rehearing was granted, and the third hearing has led to a shift of opinion so that the majority of the court now. hold that the amendment did not nullify or affect the statute imposing a double liability˙ on stockholders in banking corporations. As noted in the former opinion, the original constitutional provision on the subject was:

"Dues from corporations shall be. secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes." (Gen. Stat. 1915, § 237, note.)

This provision was changed by an amendment adopted in 1906 which provided:

"Dues from corporations shall be secured by the individual liability of the stockholders to the amount of stock owned by each stockholder, and such other means as shall be provided by law; but such individual liability shall not apply to railroad corporations nor corporations for religious or charitable purposes." (Const., Art. 12, § 2.)

Before the adoption of the amendment statutes had been enacted for the enforcement of the double liability as against stockholders and corporations other than those specifically excepted in the constitutional· provision. These provisions remained in force with some minor amendments until 1903, when the legislature repealed the enforcement provisions, except as to stockholders of banking corporations. The exception was made in these terms:

"Nothing in this act shall be construed so as in any manner to affect the liability of stockholders in any banking corporation, organized under the laws of this state as now provided by law." (Laws 1903, ch. 152.)

About five years before that time the legislature passed an elaborate act for the regulation of banks and in it is the provision, the existence of which is now challenged, that—

"The shareholders of every bank organized under this act shall be additionally liable for a sum equal to the par value of the stock owned and no more." (Laws 1897, ch. 47, § 10.)

Later and in 1906 the constitutional amendment already quoted was adopted which in effect substituted a single for the double liability of stockholders.

On one side it is contended that the amendment applies to all corporations other than those organized for railroad, religious or charitable purposes; that it operates as a repeal of the statute in question and effectually abrogates the additional or double liability of stockholders in corporations, including those holding stock in banks; and because of the obvious conflict between the amendment abolishing the double liability and the statute in question, the latter is necessarily repealed.

On the other side it is contended that there is no repugnancy between the amendment and the statute, that the amendment prescribes the minimum of liability, but leaves the maximum or extent of liability that may be imposed to the legislature and that this is disclosed by the words in the amendment, "such other means as may be provided by law." And it is further contended that the statute which provides "other means"; that is, the double liability of stockholders in banks, being in force when the amendment was adopted, continued in force and was as effective as if it had been reenacted after the adoption of the amendment. It is further insisted that the interpretation contended for is the practical construction which has been placed upon the amendment by the executive and legislative departments of the state and should be given consideration by the court.

The majority view of the court is that the amendment did not effect a repeal of the statute and that the plaintiff is entitled to recover the amount claimed from defendant. The theory is that there are no limits upon the legislative power except such as are prescribed in the state and federal constitutions, that under our system a constitutional provision is not a grant of power but is a limitation on the power the legislature may exercise and where there is no limitation, its power is absolute and plenary. The only limitations imposed upon that body by the constitutional amendment is that no individual liability shall be imposed on stockholders of railroad, religious and charitable corporations and that the liability of stockholders in other corporations shall not be less than the amount of stock owned by each of them. Under the amendment the legislature is admonished that the debts of the corporation must be secured by stockholders up to the prescribed

minimum of liability and as no maximum of liability is prescribed the legislature under its general power is free to provide for such additional liability·as it deems to be wise. The constitutional provision is a measure for the protection of creditors, and under it creditors may look to the stockholders upon their individual liability to an amount equal to the stock held by each of them and to such further liability as the legislature in its discretion shall provide. The legislature could not under the constitutional mandate fix the protection of creditors at an amount less than the single liability, but under its general power could make it a double or treble liability or any reasonable amount in excess of the minimum fixed by the amendment. The legislature had provided for a double liability of stockholders in banks in harmony with the original constitutional limitation and as it is not inconsistent with the amendatory provision as construed, that act continued in force without an express provision to that effect. It has been said that—

"The adoption of a constitutional amendment will not repeal a valid statute unless the repugnance between them be irreconcilable." (*Fischer v. Moore,* 69 Kan. 191, 202, 76 Pac. 403. See, also, *Leavenworth Co. v. The State,* 5 Kan. 688, 693; Prohibitory-Amendment Cases, 24 Kan. 700, 722.)

Under the construction placed upon the amendment there is nothing approaching repugnancy between it and the statute. Reference has been made to *Bicknell v. Altman,* 81 Kan. 436, 105 Pac. 694, and *Douglass v. Loftus,* 85 Kan. 720, 119 Pac. 74, as being opposed to the construction now given the amendment. It is the view of the court that neither of these cases can be regarded as an authority against the construction adopted as the corporations dealt with in those cases were not banks, and the statute involved here was not under consideration. It may be said further that the language employed in those cases is to be interpreted in the light of the questions the court had under consideration. They are no more controlling as to the effect of the amendment on an existing and valid statute than *Faulkner v. Bank,* 77 Kan. 385, 94 Pac. 153, and *Bank v. Strachan,* 89 Kan. 577, 132 Pac. 200, in both of which language was used that was open to the interpretation that the double liability of stockholders was still in existence. So far as the practical construction of the amendment is concerned, it is held that the court may call to its aid not only the history of the times when it was adopted, but also the contemporaneous construction placed upon it for a considerable period by those charged with

its application and execution. So attention is called to the fact that the legislature had framed and submitted the amendment in 1905 and that in 1909 it passed an act which provided for the collection of double liability from stockholders in banking corporations. (Laws 1909, ch. 59, § 7, Gen. Stat. 1915, § 573.) There was a like reference when the bank guaranty law was enacted, for in it was a provision requiring the officer in charge of an insolvent bank to exhaust the double liability of its stockholders. (Laws 1909, ch. 61, § 4, as amended by Laws 1911, ch. 62, § 1, Gen. Stat. 1915, § 598.) It was said in argument that the banking department since 1906 when the amendment was adopted had interpreted it and the statute as justifying and requiring the enforcement of a double liability against stockholders of insolvent banks, and that this interpretation had been acquiesced in by banks and the stockholders of banks during the period named. The constitutional amendment is of course to be construed in the sense in which it was understood by those who adopted it and cannot be given a meaning contrary to the import of the language used. However, where there is obscurity or ambiguity in the provision, resort may be had to the aids mentioned to ascertain the purpose and meaning of those who framed and adopted the amendment. Of themselves they are of little weight, none at all unless the construction is a doubtful one, but such light as they throw on the purpose of the authors of the amendment is corroborative of the construction placed upon it. It follows that the former decision is set aside and that the judgment of the district court is reversed with the direction to enter judgment against the defendant.

JOHNSTON, C. J. (dissenting): I am unable to concur in the construction placed upon the constitutional amendment. The view stated in the first and what was then the prevailing opinion sufficiently set forth the views I entertain on the question. (*Bank v. Laughlin*, 110 Kan. 559.) A reiteration of them here is unnecessary and a reference to that opinion is made for the grounds of my dissent.

WEST and MARSHALL, JJ., join in the dissent.

BURCH, J. (concurring): Section 1 of article 2 of the constitution of this state reads as follows:

"The legislative power of this state shall be vested in a house of representatives and senate." (Gen. Stat. 1915, § 141.)

We have here delegation to the legislature of all the power of the people of this state to promulgate laws, and inhibitions upon such power, aside from those which arise from relation of the state to the federal government, must be found in the constitution itself.

In the case of *Leavenworth County v. Miller*, 7 Kan. 479, the court said:

"The state legislature have all the legislative power that the people of the state have power to give them." (p. 508.)

In the case of *Ratcliff v. Stock-yards Co.*, 74 Kan. 1, 86 Pac. 150, the syllabus reads:

"There are no limits upon the legislative power of the legislature of the state, except such as may be found in the state and federal constitutions." (¶ 3.)

In the case of *City of Newton v. Atchison*, 31 Kan. 151, 1 Pac. 288, it was said:

"Full legislative power is, save as specially restricted by the constitution, vested in the legislature. Taxation is a legislative power. Full discretion and control therefore in reference to it are vested in the legislature, save when specially restricted." (p. 154.)

Restrictions are not to be lightly inferred. They are not to be derived from axioms, or from supposed fundamental principles, or from conceptions of the essential nature, of constitutional government. (*Wulf v. Kansas City*, 77 Kan. 358, 94 Pac. 207.) There must be some provision of the constitution itself which abridges legislative power. Abridgment may be express, or may be implied. One form is as potent as the other, but abridgment by implication must be as plain as express abridgment, and in order that this may be so, the implication must arise from an express provision. When an express provision relating to some subject of legislative cognizance is found, the provision is to be given full effect, but it will not be extended further than necessary to give it full effect, and the legislature is at liberty to deal with all phases of the subject not clearly covered by the provision. All this was said in the opinion of the court formulated by Justice Brewer, in the case of *Prouty v. Stover, Lieut. Governor*, 11 Kan. 235, the syllabus of which reads:

"Constitutional inhibitions need not always be express. They are equally effective when they arise by implication. To create an implied inhibition there must be some express affirmative provision. The mere silence of the

constitution creates no prohibition. To sustain an implied inhibition, the express provision must apply to the exact subject-matter, and the inhibition will not be extended further than necessary to give full force to the provision." (¶ 3.)

These principles have been applied in numerous cases.

The constitution provides that judicial districts shall be formed of compact territory, bounded by county lines, and that new or unorganized counties shall be attached for judicial purposes to the most convenient judicial district. (Art. 3, §§ 14, 19.) In the case of *In re Holcomb, Petitioner, &c.,* 21 Kan. 628, it was held the legislature had authority to attach to a county, for judicial purposes, a section of the state not divided into counties, either organized or unorganized. In the opinion it was said:

"The grant of power to attach existing though unorganized counties to judicial districts, carries no implication of a denial of power to so attach undivided territory. There is nothing exclusive in such grant, *i. e.,* nothing excluding the exercise of similar power upon different objects, and under different conditions." (p. 635.)

The legislative article of the constitution contains the following section:

"The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient." (Art. 2, § 21.)

In the case of *City of Emporia v. Smith,* 42 Kan. 433, 22 Pac. 616, it was held this grant of power did not exhaust the subject, and by implication forbid the legislature to confer power of local legislation on other local agencies.

The constitution directed that the state be divided into five judicial districts, provided for increasing the number of judicial districts, provided for election in each district of a district judge, and provided for election of a judge *pro tem.,* to act when the district judge was unable or disqualified to act. (Art. 3, §§ 5, 14, 20.) In the case of *The State v. Hutchings,* 79 Kan. 191, 98 Pac. 797, it was held these provisions did not, by implication, prevent the legislature from providing for more than one district judge in a judicial district.

In 1880, the constitution was amended by addition of the following section:

"The manufacture and sale of intoxicating liquors shall be forever prohibited in this state, except for medical, scientific and mechanical purposes." (Art. 15, § 10.)

In the case of *The State v. Durein*, 70 Kan. 13, 80 Pac. 987, it was held the legislature was not impliedly inhibited from further restraining the manufacture and sale of intoxicating liquor. In the opinion it was said:

"The amendment to the constitution of this state already quoted does not limit or abridge the power of the legislature further to prohibit the traffic in intoxicating liquors. It restrains the legislature in its power to tolerate only, and not in its power to suppress. . . .

"It is elementary law that grants of power by state constitutions to state legislatures include all legislative power that is not expressly withheld." (pp. 35, 37.)

To the same effect is the decision in the case of *The State v. Weiss*, 84 Kan. 165, 113 Pac. 388, the syllabus of which reads:

"The constitutional amendment forever prohibiting the manufacture and sale of intoxicating liquors in this state, except for medical, scientific and mechanical purposes, is not a restriction upon the power of the legislature to prohibit by statute. In the absence of such amendment the legislature would possess such power, and its authority is not diminished thereby." (¶ 1.)

The amendment to the constitution under consideration reads as follows:

"Dues from corporations shall be secured by the individual liability of the stockholders to the amount of stock owned by each stockholder, and such other means as shall be provided by law; but such individual liability shall not apply to railroad corporations nor corporations for religious or charitable purposes." (Art. 12, § 2.)

Full force is given to the first sentence when dues from corporations are secured by individual liability of stockholders to the amount of stock owned. To that extent the sentence restricts the power of the legislature. The legislature may not do less, but that is the full extent of the restriction, and the implication that it may not do more, is forbidden by the method of reading the constitution accepted for the last fifty years.

The words, "and such other means as shall be provided by law," add nothing by way of restriction on legislative power. To secure dues from corporations, the legislature shall resort to individual liability to a stated extent, and shall resort to such other means as it may choose. In resorting to individual liability, the legislature may not come short of the extent stated. There constraint ends. There is no prohibition against going further with that kind of security, and there is full choice of other means.

The statute in question reads as follows:

"The shareholders of every bank organized under this act shall be additionally liable for a sum equal to the par value of stock owned, and no more." (Laws 1897, ch. 47, § 10, Gen. Stat. 1915, § 523.)

If it be said that individual liability to the amount of stock owned, mentioned in the constitution, is a specific means of security, and that, looking elsewhere for security, the legislature must choose other means, the statute provides other means. The constitutional provision is that the common-law obligation of stockholders, enforceable by common-law remedies, shall be available as security for dues of corporations. The banking act provides an independent statutory liability, enforceable by a receiver for the corporation. The subjects are not the same, either in law or in popular understanding, and are not the same according to the decisions in Stover's case and Holcomb's case.

The Blackstone rule of considering the old law, the mischief, and the remedy, when interpreting written law, is a good one. The former section reads as follows:

"Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law; but such individual liabilities shall not-apply to railroad corporations, nor corporations for religious or charitable purposes." (Gen. Stat. 1915, § 237, note.)

Under the peculiar economic conditions which prevailed during the particular period in which the change was made, it was believed double liability was too severe, and kept out capital needed for development of the state's resources. These were evils which it was believed outweighed the supposed benefits of double liability. The supreme court of the United States has held the provision of the constitution to be self-executing. This court subsequently held the provision was not self-executing, but required supplemental legislation to make it effective. Following the decision of this court, the legislature repealed the supplementary legislation which it had enacted, except with respect to the liability of stockholders in banks. The provision of the constitution was plain, and was morally obligatory; and to relieve the legislature from the appearance of disobedience to the constitution which created it, an amendment to the constitution was desirable.

Except for the first sentence, the original section is identical with the amendment. The requirement that the legislature should pro-

vide for double liability was eliminated, and the milder requirement of single liability was substituted.

The grant of power contained in the first section of the legislative article of the constitution was unmistakably unlimited. The legislature knew that withdrawal of a specific subject of legislative cognizance from this grant must be equally unmistakable. With this knowledge, the legislature chose the words of the amendment. Presumably they express the legislative thought, and the intention of the people who, by their votes, made the amendment effective. In the former opinion appears the following:

"The manifest purpose of the people in adopting the amendment was to fix the individual liability of stockholders for the dues or obligations of corporations." (*Bank v. Laughlin*, 110 Kan. 559, 561.)

The only manifest purpose of the people of which I am assured is the authenticated purpose to put into the constitution the amendment framed and submitted to them by the legislature. It will be recalled that when, in the midst of agitation of the subject, the legislature repealed the supplementary measures which made the original provision effective, it saved double liability of stockholders in banks. Generally, the people were bank depositors and, judging from the action of the legislature, hostility to double liability did not embrace all classes of stockholders. If the purpose of the amendment was to tie the hands of the legislature for the future and, no matter what the welfare of the state might demand, prohibit the legislature from imposing greater liability on holders of bank stock and some other kinds of corporate stock than would exist without constitution or statute, express words to that effect were manifestly avoided. The proposed restriction must be derived by implication only and, unless the understanding of constitutional provisions which has prevailed during the greater part of the state's history is to be disregarded, the implication is forbidden.

The result is that, however the subject may be approached, the statute imposing double liability on holders of bank stock is constitutional and valid, and the judgment of the district court should be reversed.