No. 28,599.

HENRY S. THOMPSON et al., *Appellants*, v. THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF RENO et al., *Appellees*.

(275 Pac. 205.)

Opinion
filed March 9, 1929.

*F. L. Martin, Van M. Martin, John M. Martin, James N. Farley, C. M.
Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the
appellants.

*Charles Hall,* county attorney, for the appellees; *Walter F. Jones,* of Hutchinson, of counsel.

The opinion of the court was delivered by

HUTCHISON, J.: In this action a number of taxpayers in a benefit road district in Reno county seek to enjoin the board of county commissioners of that county from using the state road funds for any other purpose than for reimbursement of taxpayers in benefit districts, as prescribed in chapter 255 of the Laws of 1927. The trial court found in favor of the defendants and denied the injunction, from which judgment the plaintiffs appeal.

The plaintiffs pray for mandatory injunction and declaratory

judgment in addition to injunction. As expressed by the trial court, the question here is whether the reimbursement provided for in chapter 255 was mandatory or optional at the time the injunction action was commenced. Section 9 of the act provides for "the payment of the installments of the benefit district tax assessed on the property in such benefit districts as the same become due, and to the reimbursement to the taxpayers of all assessments made and collected on such lands" out of the county and state road fund. This general requirement is followed in the same section with the following sentence:

"*Provided, however,* That such payments and reimbursements shall be optional with the county board in any county where any proceedings are now under way for the construction of a state road in accordance with some federal aid specification until the construction of such road shall have been completed."

The answer of the defendants was that proceedings were under way for two such roads at the time this act took effect, and therefore it had the option of using these funds for the completion of those two projects instead of distributing them as reimbursement. This act of 1927 repealed and took the place of chapter 214 of the Laws of 1925, which authorized the construction of state highways with federal aid, prescribing the method of procedure and making provision for reimbursement. The new law made several changes in the old and specifically set the time of its taking effect about six weeks in the future. It was approved March 15, published March 17, and it provided it should take effect May 1.

The first point urged is that the word "now" in the option or proviso means literally the present time, the very moment the legislature is speaking, namely, the day the act was approved. There are authorities sustaining that view, but the weight of authority and the tendency of the Kansas decisions is to consider the whole act as the voice of the legislature on the specific day they have designated for it to become a law, to be operative and in effect, unless a different construction is plainly and purposely intended.

"Now. An adverb implying present time. . . . The intent with which the term is used as gathered from the contents determines its meaning. It does not necessarily mean at the present time. The word is sometimes used, not with reference to the moment of speaking, but to a time contemporaneous with something done. It may mean at the time spoken of or referred to as well as at the time of speaking." (46 C. J. 632.)

When the act itself designates a particular date in the near future for it to take effect such designation should control rather than a

retrospective or even a present date, upon the theory that a definite date signifies a legislative purpose, and a prospective effect is preferable to a retrospective or even a present effect.

"It seems clear that the legislature intended that this statute was to operate prospectively. That would ordinarily follow, not because a retroactive effect could not be given, but that such construction is never given unless the legislative intent to do so is clear and unequivocal. (*Douglas County v. Woodward,* 73 Kan. 238, 84 Pac. 1028; *City of Wichita v. Railroad & Light Co.,* 96 Kan. 606, 152 Pac. 768; *Lightner v. Insurance Co.,* 97 Kan. 97, 102, 154 Pac. 227.)" (*State v. Trust Co.,* 99 Kan. 841, 843, 163 Pac. 156.)

In the case of *Nyhart v. Iverson,* 127 Kan. 48, 272 Pac. 176, called the Atchison county case, to which further reference will be made later, the date of taking effect of this road law was not in controversy, and from the dates of the several facts involved therein it would have made no difference whether the date of its taking effect was March 17 or May 1. There was no question in that case on that point, nor ruling thereon, but by common consent March 17, the date of the publication of the act, was the date referred to as when it took effect.

It is the contention of the appellants that there were no proceedings under way in this case in accordance with some federal-aid specification prior to July 22, and possibly later, and therefore there was nothing that would give the defendant board an option as to the use of the funds for construction purposes instead of reimbursement. A statement of the facts as to proceedings and dates, as shown by the exhibits and oral evidence, is as follows:

September 1, 1926, petition was filed for the extension of state highway U. S. 50 South as a federal-aid project. September 23, 1926, minutes of the board show the following:

"Board met with the board of county commissioners of Harvey county for the purpose of discussing the improvement of Fourth avenue East. It was decided jointly with Harvey county commissioners to proceed as soon as possible to improve the above road as to grade, culverts and sand clay surface."

The county engineer after this meeting proceeded and surveyed the road on Fourth avenue East, known as U. S. 50 South. November 1, 1926, petition was filed for state road 17, sometimes called Harper road, as a federal-aid project. November 16, 1926, the following action was taken by the county board:

"November 16, 1926. Board discussed petitions on file for hard-surfaced roads asked for on Harper road; also Fourth avenue East road. Before taking

action on the petitions the board requested Chairman French to make a trip to Topeka to meet the state highway commission and ascertain if petitions will meet requirements to receive state and federal aid."

December 14 and 15, 1926, the state highway commission took action on these projects, requesting detailed information of the division engineer, and on December 17, 1926, the state engineer sent a letter to the division engineer indorsing such request and referring to the projects in connection with the federal aid available. The county engineer testified the plan of work on U. S. 50 South was started in December, 1926. Culverts were widened and estimates furnished the highway commission for four miles on U. S. 50 South prior to February 1, 1927. January 14, 1927, a tentative estimate was furnished the state highway commission by the county engineer as to both roads, both designated as being of concrete type, U. S. 50 South being four miles in length, probable cost $112,000, of which one-half was federal aid, one-fourth county, and one-fourth state aid, and No. 17 was five miles in length, probable cost $140,-000, of which $70,000 was federal aid and the balance state and county. The county engineer further testified as to federal-aid specifications as follows:

"The specifications for these improvements on 50 South and No. 17 were prepared by the county and approved by the state according to specifications already approved by the department of agriculture. The specifications are approved by the department of United States bureau of public roads, and the plans were prepared in accordance with those and approved by the state. The state highway commission has on file certain standard specifications for different kinds of highways—a hard-surfaced highway, graveled highway, or even a dirt-surfaced highway. There are different types of surfaced highways. They have specifications for ordinary grading, for sand and clay work, for gravel work, and then the different pavements. They are all in writing. The witness has copies of all of them on file in a bound book 'Standard Specifications.' They are official. Witness produces a book for the record. . . . They provide rules to be followed in any particular type, the manner of construction. . . . The plans had been started in 1926 but weren't finally approved until the summer of 1927 . . . the 22d of July, 1927."

April 1, 1927, the board passed a resolution and order concerning these two roads, reciting that they came up at that time "for final consideration and action by the board," and ordered them to be a part of the state road system; that the building be "in accordance with the plans, specifications and estimates, approved by the state highway engineer and the United States secretary of agriculture, is an immediate necessity and is of general public utility." The order

concluded with directions to the county engineer to make an accurate survey, together with plans and specifications for the improvement therein ordered, and after final approval to file them with the county clerk. July 22, 1927, the board made another order as to road 17 substantially the same as on April 1, except it stated the amount of county and state aid there was available. On the same day an order was made for a further extension of road 17. September 6, 1927, a new petition was filed for No. 17, and on September 17, 1927, the board approved it. September 9, 1927, the highway commission agreed with the county board as to original part of road 17. September 27, 1927, the county board made another order concerning U. S. No. 50 South, including an extension of four miles in addition to the original four miles. October 4, 1927, the county board made a final order as to U. S. 50 South, covering the entire eight miles, and referred to the matter being initiated by the resolution of April 1, 1927.

Appellants insist that the proceedings of July 22, 1927, are the first of any substantial character, all previous incidents being merely preliminaries, and the resolution and order of April 1, 1927, had to be followed with other order by the board after the approval of the highway commission. There were additions made to both roads, which probably required some of the subsequent orders. We find nothing further done with U. S. 50 South from April 1, 1927, until September 27, 1927, and in this order, as in that of October 4, 1927, the additional four miles are included.

The above statement shows there was quite a little done and accomplished with reference to these two roads before May 1, 1927. Were these two projects or either of them "under way" on May 1, 1927? The term "under way," used in the proviso of the road law above quoted, is a nautical one, defined by Webster as "through the water; in motion—said of a vessel starting out; hence, making progress or having started in any sense." See, also, 4 Words and Phrases, 2d series, 1052. A ship is under way when it has started, or is making progress without regard to the distance it has traveled or gone. Would not a road project be under way when it has been definitely started or commenced? It is quite like a suit pending, which requires nothing more than a substantial start—not a gesture, but a real start in good faith.

"A civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition, and causing a summons to be issued thereon." (R. S. 60-301.)

"An action shall be deemed commenced within the meaning of this article, as to each defendant, at the date of the summons which is served on him, or on a codefendant who is a joint contractor, or otherwise united in interest with him." (R. S. 60-308.)

"When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency." (R. S. 60-2601.)

"For the purpose of computing the statute of limitations an action is deemed commenced against the defendant upon the filing of a petition which states a cause of action against him and the service of process upon him." (*Commercial Nat'l Bank v. Tucker,* 123 Kan. 214, syl. ¶ 2, 254 Pac. 1034.)

It is in fact a saving clause in legislation and similar to hundreds of such clauses which provide for the act not to affect suits pending. In the consideration of this subject in 36 Cyc. 1232 it is said:

"The word 'pending,' as applied to proceedings in saving clauses, is used in the general sense of 'commenced and not terminated.' "

And in 32 Cyc. 406 a proceeding is defined as "regular and orderly progress in form of law including all possible steps in an action, from its commencement to the execution of judgment."

Reverting now to the Atchison county case, above cited, which was the first interpretation of this part of section 9 of the road law under consideration, it is observed that only four incidents are noted in the progress of that road project, two before and two after the taking effect of the act, as follows: June, 1925, county board applied for federal aid for the road under consideration; February 16, 1926, county board adopted a resolution to construct and maintain the road as a federal-aid road; September 1, 1927, contract for the road was let; and September 10, 1927, work on the road was begun. The last two are of use only to show in this case, as in the case at bar, that the matter had not progressed as far as the letting of the contract or beginning of work until long after the act became effective. The court held in that case that the two acts which occurred before the law took effect, viz., the application of the county board for federal aid and the adoption of a resolution to construct and maintain the road as a federal-aid road, were sufficient to make the proposed road a federal-aid project already under way when the act of 1927 took effect.

In the case at bar we have the two exact counterparts of the only two instances in the Atchison county case, as follows: The petitions for the two roads as separate federal-aid projects, one on September 1, 1926, and the other November 1, 1926, and the resolution of the

county board to construct and maintain them as federal-aid roads, adopted April 1, 1927. This fully meets the complete showing made in the Atchison county case, where the project was held to have been commenced or under way before the law went into effect. But in the instant case there are the additional items of progress as enumerated, which include resolution of county board to request state highway commission for federal aid, survey estimates, widening culverts, submitting estimates to state highway commission, and action of such commission. Under a reasonable construction of the statute and the authority of the Atchison county case it is held both these proposed roads were under way as federal-aid projects before the act of 1927 took effect.

Appellants urge and insist that this is not enough under the proviso above quoted, but that the projects must have been under way "in accordance with some federal-aid specification"; that it must be a definite one of the several federal-aid specifications as defined in section 8 of the same chapter, and unless a definite specification was selected and agreed upon by those in authority before the act took effect the project could not be considered as being under way. We think such a construction would be extremely technical. The statute only requires it to be in accordance with some federal-aid specification—any one of the many. The county engineer testified, as above quoted, what the specifications mentioned in the statute were. He said they were of different kinds and types of surface, each of which is fully described as to specific requirements and are bound in a book called "Standard Specifications," a copy of which he introduced in evidence. All federal-aid roads, it would follow, were required to be constructed according to some one of these types. A proposed road not in accordance with some federal-aid specification would not be entitled to federal aid, but might make an approved county or township road. That kind of a project would not, under this proviso, entitle the county board to the option as to the use of the funds. Appellants say if any sort of a start for the construction of a road will give the commissioners the right to use the funds for its construction instead of reimbursement, section 9 is useless because section 8 excludes counties where such roads are not completed. There is quite a difference. "Not completed" refers to construction, and implies that such construction has been started but not finished. That is, construction not completed, whereas this proviso is concern-

ing "proceedings now under way"—entirely different situations. The reason for the exception is compelling and in harmony with the whole act, viz., to use this state and county road fund above and beyond what is needed for maintenance to pay taxes assessed to benefit-district property owners or reimburse them for taxes already paid, except where it is needed to complete a road being constructed or where proceedings were under way for such a project. The two roads here under consideration were without question being projected in accordance with some federal-aid specification as required by the statute and such as to entitle the county board to exercise the option of concluding the proceedings and arranging for their construction out of the available funds instead of using the funds for reimbursement.

We have thus far assumed that the plaintiffs have a legal capacity to maintain this action, and having reached the conclusion in favor of the option it is now unnecessary for us to decide that question.

The judgment is affirmed.