No. 31,368

Charles W. Johnson, Receiver of The International Mortgage Trust Company, *Appellant*, v. J. A. Eddy, County Treasurer of Shawnee County, and the Board of County Commissioners, etc., *Appellees*.

(27 P. 2d 283.)

Opinion filed December 9, 1933.

*Ralph T. O'Neil, J. D. M. Hamilton* and *Barton E. Griffith,* all of Topeka, for the appellant.

*Lester M. Goodell,* county attorney, *Paul L. Harvey, Hall Smith,* assistant county attorneys, *Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, and *D. A. Murphy,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action in replevin. Plaintiff as receiver of the International Mortgage Trust Company sought to recover possession of securities consisting of personal notes and notes secured by mortgages, all of the aggregate face value of $43,933.73. Defendants answered, setting up a history of the transaction between the mortgage trust company and the defendant Eddy as county treasurer, whereby he came into possession of the securities. Plaintiff's reply denied that the securities were delivered to Eddy in compliance with the agreement alleged in his answer or by reason of any action on the part of the mortgage trust company, but if so delivered, the delivery was at a time said trust company was insolvent, and the delivery constituted an unlawful preference, and was void and of no

effect against the creditors of said mortgage trust company and plaintiff as receiver thereof.

The case was tried to the court, which made findings of fact and conclusions of law as follows:

### "Findings of Fact

"1. The International Mortgage Trust Company was incorporated in 1925 under the laws of the state of Kansas, with power to do a banking business, including the power to receive deposits of public funds subject to check, and has, since its organization, transacted such business in Topeka, Kan., until February 15, 1932. That at all times mentioned herein, and up to the time that the bank commissioner of the state of Kansas took charge of said trust company, Ira E. Henry was the duly elected, qualified and acting secretary, treasurer, and active managing officer of said International Mortgage Trust Company.

"2. On Monday, February 15, 1932, H. W. Koeneke, bank commissioner of the state of Kansas, took charge of the said trust company and of its property and effects, and on February 17, 1932, said bank commissioner appointed the plaintiff herein as receiver of said trust company, and on said date the plaintiff herein qualified as such receiver.

"3. That on February 13, 1932, the cash market value of the assets of The International Mortgage Trust Company were insufficient to meet its liabilities, and this condition had existed at least three weeks prior to that date.

"4. That included among the assets of said trust company at all of the times in question herein, were notes, mortgages and other securities which constitute the subject matter of this litigation, and that during all of said times the trust company was the owner of such securities, and at all times maintained the physical possession thereof until the late afternoon of February 13, 1932.

"5. That the plaintiff has made due and legal demand upon the defendants for the return of said securities.

"6. The defendant, J. A. Eddy, is and was at all times referred to in plaintiff's petition, the treasurer of Shawnee county, Kansas, and as said county treasurer had on deposit in said trust company a large sum of money, which trust company had theretofore legally been designated by the board of county commissioners of Shawnee county, Kansas, as a depository for said county funds. The trust company secured the deposit of the county funds by depositing with the county treasurer various securities, said securities being deposited with the defendant Eddy, under agreements which, except as to number, the amount and description of the securities and the dates of the agreements, were in form and terms the same as the agreement identified as 'Plaintiff's Exhibit 6,' covering the specific securities involved herein, and which is as follows:

"Receipt for Securities.

"Amount, $.....................

"Office of Treasurer, Shawnee County,

Date.........................................................................

"This certifies that the International Mortgage Trust Company of Topeka, Kan., designated by the board of county commissioners of Shawnee county as

a depository of county funds, has this day filed securities described below for the security of such funds. These securities are placed in the vault of the Fidelity State Savings by the county treasurer for safe keeping, in accordance with the provisions of the law, Senate bill No. 303, and will be released only on joint order of the county treasurer and the International Mortgage Trust Company, except in case the trust company fails to pay any check against a balance held by them belonging to Shawnee county, then the securities will be delivered to the county treasurer on his order.

(Sgd.)    J. A. EDDY, *County Treasurer.*
(Sgd.)    I. E. HENRY, *Bank Official.*

"The following securities, the property of said trust company, are deposited as surety and made a part hereof:

"7. Said trust company did, from time to time, with the consent of the defendant Eddy, withdraw from the safety deposit vaults of the Fidelity Savings State Bank the securities theretofore deposited to secure the county funds, and at the time of such withdrawals either replaced and substituted the securities so withdrawn with other securities of equal value and amount or, as a condition to being permitted to make such withdrawals, agreed to promptly replace said withdrawn securities with other securities of equal value and amount.

"8. On December 31, 1931, the defendant Eddy withdrew from said deposit the sum of $30,000, leaving a balance on deposit as of that date of $180,009.84, to secure which he held $192,616.86 of securities. On January 2, 1932, the defendant Eddy deposited $29,947 at the request of the trust company and upon the express oral agreement of the trust company to promptly deposit additional securities to an amount at least equal to the whole deposit after the deposit of said sum of $29,947 in said trust company, which raised the total deposit to $209,956.84, to secure which the defendant Eddy then had on deposit securities of the face value of $192,616.86.

"On January 21, 1932, said deposit was credited with $350.96 of interest, thus raising the deposit to $210,307.80.

"9. On January 28, 1932, the trust company withdrew securities in the amount of $23,500 theretofore deposited by it to secure the county funds deposited with .it. At the time of the withdrawal of said securities, Ira E. Henry, the executive officer of said trust company and its secretary and treasurer, orally agreed with the defendant Eddy that if the defendant Eddy would permit the withdrawal of said securities that he would promptly replace the securities so withdrawn by other securities of equal value, and would deposit additional securities to cover the full amount of the county's deposit in said trust company. Relying upon such agreement, the defendant Eddy permitted the withdrawal of the securities aggregating $23,500, which securities consisted of Kansas municipal, township and county bonds, and refrained from drawing out of the county's account with the trust company an amount sufficient to bring the deposit within the amount of the securities deposited to secure the same.

"10. At no time since January 28, 1932, has an officer of the trust company or the receiver thereof returned or offered to return the securities amounting to $23,500 so withdrawn on January 28, 1932.

"11. For a considerable period prior to the time in question, Shawnee

county had been depositing funds in said trust company, and whenever the amount of the county deposits in said trust company exceeded the face value of the securities deposited to secure such amount, the defendant Eddy would, and did, from time to time, request said trust company to deposit additional securities to cover such shortage; and the defendant Eddy did, on numerous occasions between January 28, 1932, and February 13, 1932, demand of said trust company additional securities to replace those withdrawn at that time and to increase the amount of pledged securities to equal the amount of the county's deposit. On several occasions in December, 1931, and January, 1932, the defendant Eddy requested Ira E. Henry to deposit sufficient securities to bring the total amount thereof up to the amount of the county's deposit, and was assured by the officers of the trust company that it would be done. It was to reduce the deposit so as to bring it within the amount of securities pledged that the defendant Eddy, on December 31, 1931, withdrew from the deposit said sum of $30,000.

"12. On February 11, 1932, the amount of the county's deposit in said trust company, including a credit of $355.56 interest accrued on that date, was $210,-663.36, to secure which deposit the trust company had theretofore deposited securities in the aggregate amount of $169,116.86.

"On Tuesday, February 9, 1932, the defendant Eddy again reminded Mr. Henry of his prior agreement to deposit additional securities to fully cover the county's deposits with said trust company, and was requested by Henry to return to the trust company on Thursday, February 11, 1932, at which time said securities would be ready.

"On Wednesday, February 10, 1932, Mr. Henry segregated from the assets of the trust company the various securities involved herein and described in 'Plaintiff's Exhibit 6.' These securities had a rubber band around them, and a slip of paper with memorandum 'County Treasurer' was placed under the rubber band, and Mr. Henry then handed said securities to an assistant with instructions to make a list of the same and prepare the form of receipt and agreement under which securities were usually deposited, which list was prepared and completed on February 11, 1932, and was signed by Mr. Henry for the trust company on Thursday, February 11, 1932.

"On Thursday, February 11, 1932, the defendant Eddy again called at the office of the trust company and asked for the securities and was told by Mr. Henry that he was too busy to take care of it then, and would call him later.

"On Friday, February 12, 1932, being a holiday, the trust company was not open for business, but on said date its board of directors met and passed a resolution set forth in the minutes of the board of directors, which minutes are designated as 'Defendant's Exhibit 1,' and are as follows:

"'A special meeting of the board of directors of the International Mortgage Trust Company of Topeka, Kan., was convened in the office of the trust company on February 13, 1932. After discussion and consideration of the matter, it was duly moved, seconded and carried that the officers be authorized to secure state and county funds on deposit in the trust company by putting up collateral in the form of securities and property.

(Here follows resolution with respect to state treasurer.)

"'There being no further business, the meeting adjourned.

"'IRA E. HENRY, *Secretary*.'

"In the late afternoon, about 5 p. m. of February 13, 1932, the securities mentioned in plaintiff's petition, which theretofore had been set apart for Mr. Eddy as aforesaid, were delivered to him by the trust company; and Mr. Eddy did not know and was not acquainted with the particular securities making up the list until he obtained possession of them at that time.

"13. That the securities listed and described in 'Plaintiff's Exhibit 6' aggregated the amount of $43,933.73, and were the only securities deposited by the trust company to secure the county's account after the withdrawal of the securities aggregating $23,500 referred to in finding No. 9.

"14. On February 15, 1932, the defendant Eddy drew a check, bearing date of February 13, 1932, and before he had closed his books as of that date upon said trust company and against said deposit belonging to Shawnee county, Kansas, in the sum of $15,000, upon which check payment was refused by said trust company.

"15. The deposit of $29,947 on January 2, 1932, and the $23,500 of securities withdrawn from the pledged securities on January 28, 1932, augmented the assets of the trust company which passed to the receiver in an amount in excess of the difference between the amount of the deposit and the securities pledged from January 2 to February 13, 1932.

"16. (Statement of county treasurer's account.)

"CONCLUSIONS OF LAW

"1. The securities involved herein were delivered to the defendant Eddy by the officers of the trust company for the purpose of securing the deposit of public funds deposited by said defendant Eddy, as treasurer of Shawnee county, Kansas, and constituted a valid pledge thereof.

"2. Under section 19-530 of the Revised Statutes of Kansas, 1923, it was the duty of the defendant Eddy, in making deposits of county funds in the trust company, to take a bond or bonds as therein provided to secure said deposits, or under section 9-142, Revised Statutes of Kansas, 1923, as amended, to take securities to secure said deposits in lieu of a bond, in which latter instance said securities must, in order to make a legal deposit, at all times equal the amount of the county deposit. The deposit of the county funds accepted and received by the trust company without the giving of such bond or securities, became an unlawful and unauthorized deposit.

"3. When the trust company received deposits of public funds from the defendant Eddy, or had on deposit public funds belonging to the county in excess of the amount covered either by the lawful bond or other securities, it became a trustee *ex maleficio* for the excess amount for the use and benefit of the county; and to avoid circuity of action it is held that said securities are impressed with a trust in favor of the defendants, and the plaintiff was not entitled to their possession at the time this action was instituted.

"4. That the defendants shall recover their costs herein."

The judgment of the court was that plaintiff take nothing and that defendant have judgment for the possession of the securities. During the pendency of the suit some of the notes had been paid to the clerk of the court, and this sum was ordered paid to the defendant. Plain-

tiff's motions for a new trial and for judgment on the findings of fact and to set aside the findings of fact and conclusions of law and to render judgment for plaintiff were denied, and he appeals, assigning as error the entering of judgment in favor of plaintiff and the denial of his motions.

No complaint as to the correctness of the findings of fact is made. Two propositions are submitted and argued by appellant. The first is that the trial court erred in holding that securities obtained by the defendant were impressed with a trust; the second, that the trust company could not legally pledge its assets to secure the county funds or deposits made with it.

Whether or not the court erred depends on the application of certain statutes.

R. S. 17-2002 provides the purposes for which trust companies may be formed, and the ninth paragraph recites:

"To receive deposits of money from any bank, savings bank, trust company, or from any public officer or board subject to check, or from any person, company, corporation or association upon certificates of deposit, and may allow interest on such deposits; to buy and sell foreign or domestic exchange, gold, silver, foreign coin, or bullion."

R. S. 17-2003 requires that trust companies receiving deposits keep certain percentages subject to check, etc. R. S. 17-2013 puts such companies under supervision of the bank commissioner, subject to examination, etc. R. S. 17-2014 makes certain provisions in the banking laws pertaining to failure to make publication of reports, refusal to permit examinations, etc., applicable to trust companies, and R. S. 1931 Supp. 17-2015 makes the provisions of the banking law relating to impairment of capital and insolvency and the duties of the bank commissioner applicable to trust companies.

R. S. 1931 Supp. 9-142 reads in part as follows:

"No bank, bankers, or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security, except that bonds of the United States, of the state of Kansas, or of some county, school district, or municipality of the state of Kansas, or other securities, may be deposited with the . . . and with any county treasurer . . . or other fiscal officer responsible for public funds . . . for the security of such funds . . ."

R. S. 9-138 recites:

"Any individual, firm or corporation who shall receive money on deposit, whether on certificates or subject to check, or shall receive money for which it issues its check, draft, bill of exchange or other evidence of indebtedness for which it charges a fee, shall be considered as doing a banking business, and

shall be amenable to all the provisions of this act: *Provided,* That promissory notes issued for money received on deposit shall be held to be certificates of deposit for the purposes of this act."

R. S. 19-530 recites:

"That in all counties of this state the county treasurer shall deposit daily all the funds and moneys of whatsoever kind that shall come into his possession by virtue of his office as such county treasurer, in his name as such treasurer, in one or more responsible banks located in the county and designated by the board of county commissioners as county depositories. . . . Before making such deposits the said board shall take from said bank or banks a good and sufficient bond . . . conditioned that such deposits shall be promptly paid on the check or draft of the treasurer of said county. . . ."

Plaintiff argues that under R. S. 17-2002 it is authorized to receive deposits, and that no requirement for security is made, and no authority to give security is authorized. It will be noted that the statutory authority to receive deposits is in general terms—*i. e.,* "from any public officer." However, a specific statute (R. S. 19-530) requires the county treasurer to do more. He must make his deposits daily in a bank located in the county and designated by the board of county commissioners, the statute requiring the bank of deposit to secure the depositing treasurer by bond as specified in the statute. The specific statute controls the general one. See 59 C. J. 1056, wherein it is said:

"Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, unless it appears that the legislature intended to make the general act controlling; and this is true *a fortiori* when the special act is later in point of time, although the rule is applicable without regard to the respective dates of passage."

Also, see *Wulf v. Fitzpatrick,* 124 Kan. 642, 261 Pac. 838.

Assuming for the moment that the trust company has the status of a bank, it must be held that before the county treasurer could lawfully deposit county funds in the trust company, the trust company must have been designated as a depository and have given bond. It may here be remarked that by the provisions of R. S. 1931 Supp. 9-142 the bank could secure the deposit by pledging designated assets of the depository bank. It would thus appear that the only way in which the county treasurer could make and the trust com-

pany could receive deposits would be on the assumption that the trust company was a bank for that purpose. Regardless of the present contention of the receiver, and regardless of what may be the legal situation at the time deposits were made by the county treasurer and received by the trust company, the parties must have thought the trust company was acting as a bank, as is shown by the sixth finding of fact.

Under the circumstances noted did the trust company stand in the position of a bank? R. S. 9-138 provides that any corporation which shall receive money on deposit whether on certificate or subject to check—and the findings make it clear that the trust company did that—shall be considered as doing a banking business. In many particulars of the statute with reference to trust companies the banking law applies, and under the provisions of R. S. 1931 Supp. 9-101a to 9-101f, a state bank may acquire authority to act as a trust company, or a state bank and a trust company may consolidate.

In some respects the powers of a state bank and a trust company are common, and in other respects similar, as a reference to the banking laws (R. S. 9-101 *et seq.*) and trust company laws (R. S. 17-2001 *et seq.*), both as amended, will show.

Shortly after the bank commissioner took charge of the trust company certain creditors of the company filed an involuntary petition in bankruptcy against it. The receiver who brings the instant action and the state of Kansas on the relation of the attorney-general intervened and moved to dismiss the proceeding in bankruptcy for want of jurisdiction. The district court denied the motions, and an appeal was taken to the circuit court of appeals and there decided. (*State of Kansas v. Hayes,* 62 F. 2d 597.) The motion to dismiss was predicated on the ground that the trust company was by virtue of the laws of Kansas and in actual fact in operation as a banking corporation within the intent and meaning of the bankruptcy act. The statutes of Kansas pertaining to banks and trust companies were somewhat reviewed, and it was said:

"That many trust companies organized under the laws of this state have done a very large banking business by receiving public funds on deposit subject to check, and the moneys of savings banks, and other banks, for many years past, is a matter of common knowledge, as is shown by the record in this case, . . . It is thus seen that under the many provisions of the statutory law of this state trust companies are made banking corporations." (pp. 598, 599.)

And the conclusion of the opinion is:

"From all the facts, matters and things stated, we are of opinion it must be held the trust company in question is a banking corporation within the contemplation of the lawmaking power of this state," etc. (p. 601.)

Attention is directed to the citation of authorities in the case bearing on the proposition of what constitutes banking. While the decision is not conclusive, it is persuasive.

Under the findings of fact, it is clear that in receiving public deposits and in giving security therefor the trust company was acting in the same manner as though it were a bank, and our conclusion is that at least under these circumstances it was so far a bank that its giving of security by delivery of the notes referred to in finding 13 was a lawful act, binding on the trust company and on its receiver. It follows that the trial court's conclusion of law was proper.

It appears also from the findings that deposits of money were made by the county treasurer without security either previously or at that time being given. Such deposits were in violation of law, for at the time they were made the county treasurer and the trust company knew that no bond as provided by R. S. 19-530 had been delivered, nor was security as provided in R. S. 1931 Supp. 9-142 given. Until the securities referred to in finding 13 were delivered to the county treasurer, as set out in finding 12, the deposit was unlawfully made, the title did not pass, and the trust company was a trustee *ex maleficio* for all unsecured deposits. (See *Phillips v. Bank,* 98 Kan. 383, 158 Pac. 23.) When the securities were furnished, the title passed and the trust relation ended, and the usual relation of a depository and a depositor with a secured deposit arose. The trial court's finding as to trusteeship *ex maleficio* was not stated in an alternative way, but is subject to the construction that if the trust company was not held to the deposit of securities as a bank, then it held the excess deposits as trustee *ex maleficio.*

In view of what has been said, neither the question of the solvency of the trust company nor the question of preference need be discussed, nor need we concern ourselves with the proposition that the trust company must return the $23,500 of bonds mentioned in findings 9, 10 and 13, before being entitled to a return of the $43,933.73 of securities.

The trial court's conclusion that the plaintiff was not entitled to the return of the securities and that he take nothing, and that defendant Eddy, as county treasurer of Shawnee county, have judg-

ment for the possession of the securities, or the cash for those paid during pendency of the suit, was correct, and the judgment is affirmed.

HUTCHISON, J., not sitting.