154

No. 31,562

THE INTERNATIONAL MORTGAGE TRUST COMPANY, *Appellant,* v. IRA
E. HENRY, *Appellee.*

(30 P. 2d 311.)

Opinion filed March 10, 1934.

*Ralph T. O'Neil, J. D. M. Hamilton* and *Barton E. Griffith,* all of Topeka,
for the appellant.

*Walter T. Chaney, B. J. Lempenau, Robert Stone, James A. McClure,
Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for
the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover a claimed statutory
double liability of a stockholder in an insolvent trust company
organized under chapter 407 of the Laws of 1901, as amended, and
now appearing as R. S., ch. 17, art. 20, as amended.

The second amended petition alleges the incorporation of the
International Mortgage Trust Company on March 24, 1925, its
charter reciting:

"That this corporation is organized for profit and that the purposes for
which it is formed are: To have and to exercise all the powers such as are
granted to and exercised by trust companies under the laws of the state of
Kansas,"

and that—

"Pursuant to said corporate charter, said the International Mortgage Trust Company has been engaged in the banking business and has transacted its business in the state of Kansas as a banking corporation";

that the corporation was found to be insolvent by the bank commissioner, who took charge and appointed a receiver to liquidate it; that its assets are insufficient to pay its liabilities and it has become necessary to enforce the individual liability of the stockholders. Three causes of action are alleged, two of which are based on certificates issued prior to February 14, 1931 (when the statute was amended as hereafter noted), and one of which is based on a certificate for forty-seven shares issued November 2, 1931. This certificate was issued upon the surrender of a certificate issued March 3, 1926, for forty-nine shares, the last certificate having been surrendered so that a new certificate could be issued to a purchaser of two shares, and another certificate for the remaining forty-seven shares could be issued to the original holder, the defendant here.

The defendant's general demurrer to the above amended petition was sustained, and the receiver appeals.

Attention is directed to the allegation that pursuant to its charter appellant has been engaged in the banking business and has transacted its business as a banking corporation. There are no further allegations as to what it did that would show it was engaged in the banking business, and it might well be said the allegation is a conclusion. As is more fully shown later, under its corporate powers it was authorized to do certain things that are defined as "doing a banking business," and if the allegation refers to these, all well and good; if it refers to doing all the business a "banking corporation" could do, the doing of those acts not authorized by the trust company act was *ultra vires*.

Whether the demurrer was properly sustained depends on whether or not stockholders in an insolvent trust company are liable for an additional amount equal to the par value of the stock held by them; or, in common parlance, whether or not they are subject to "double liability." Appellant urges three methods of statutory interpretation, any one of which, if sound, sustains its contention that such an additional liability exists: (1) By reason of the provision in section 15 of chapter 10 of the Laws of 1898 not having been repealed by chapter 152 of the Laws of 1903; (2) by reason of the provisions in the statute with reference to trust companies, as they existed

prior to the amendment of 1931, making certain sections in the banking law with reference to insolvency, etc., applicable to trust companies, and (3) by reason of R. S. 1931 Supp. 17-2015 (ch. 152, Laws 1931) which expressly makes the provisions of the banking laws relating to shareholder's liability applicable to trust companies and has a retroactive force by reason of reserved power under section 2 of article 12 of the state constitution, and is fully effective as to stockholders of a trust company becoming insolvent after its passage. The words "shareholder" and "stockholder" are both used in the statutes mentioned herein and in this opinion are used as synonymous words.

1, 2. It may be observed that the contention that a trust company is a banking corporation is based on R. S. 9-138, which provides that any person, firm or corporation doing certain named things "shall be considered as doing a banking business." A similar provision was in the banking act prior to the enactment of the trust company act and was in effect when the latter act was passed. Section 36 of chapter 47 of the Laws of 1897 recited:

"Any individual, firm or corporation who shall receive money on deposit, whether on certificates or subject to check, shall be considered as doing a banking business and shall be amenable to all the provisions of this act," etc.

As originally adopted, our constitution provided, in section 2 of article 12, that—

"Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder; and such other means as shall be provided by law," etc.

Although it was held by the supreme court of the United States in *Whitman v. Oxford National Bank*, 176 U. S. 559, 44 L. Ed. 587, that the above provision was self-executing, in *Woodworth v. Bowles*, 61 Kan. 569, 60 Pac. 331, it was held that it was not self-executing, but required legislative action to give it effect.

Prior to 1898 the general corporation statute (G. S. 1868, ch. 23, art. 4, sec. 32) provided, under conditions therein, that—

"Execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon," etc.;

and section 46 of article 5 of the same act provided:

"No stockholder shall be liable to pay debts of the corporation, beyond the amount due on his stock, and an additional amount equal to the stock owned by him."

In the special session of 1898 changes were made, in that the right of a creditor to proceed individually against the stockholder was taken away, and it was provided by section 14 of chapter 10 of the Laws of 1898 that, with certain exceptions not here important, the receiver of a failed corporation should institute proceedings against all stockholders to collect unpaid subscriptions to the stock of such corporations, together with the additional liability of such stockholders equal to the par value of the stock held by each, and section 15 of the last mentioned act read as follows:

"The stockholders of every corporation, except railroad corporations or corporations for religious or charitable purposes, shall be liable to the creditors thereof for any unpaid subscriptions, and in addition thereto for an amount equal to the par value of the stock owned by them, such liability to be considered an asset of the corporation in the event of insolvency, and to be collected by a receiver for the benefit of all creditors."

By chapter 152 of the Laws of 1903 the last above-mentioned sections 14 and 15 were repealed, section 2 of the repealing act reciting:

"Nothing in this act shall be construed so as in any manner to affect the liability of stockholders in any banking corporation organized under the laws of this state, as now provided by law."

At the time of the enactment of the 1903 repealing act, liability of shareholders of banks was defined by section 10 of chapter 47 of the Laws of 1897, as follows:

"The shareholders of every bank organized under this act shall be additionally liable for a sum equal to the par value of stock owned, and no more."

This section has never been changed and now appears as R. S. 9-110.

In the meantime chapter 407 of the Laws of 1901 (now appearing as amended as R. S. 17-2001 *et seq.* and R. S. 1931 Supp. 17-2009 and 17-2015) was enacted, and provides for the organization of trust companies.

It is the contention of appellant that by virtue of the general corporation statute, prior to the 1903 enactment, stockholders in all companies, with exceptions not here important, were subject to double liability; that said double liability as to banking corporations was not repealed by reason of the saving clause in section 2 of chapter 152 of the Laws of 1903; that by reason of certain powers granted to trust companies, hereafter noticed, they are banking corporations and, therefore, that stockholders in trust companies have always been subject to double liability. For the purpose of

discussion, it may be assumed that prior to 1903 stockholders in trust companies were subject to double liability, and that if a trust company is a banking corporation such liability as to its stockholders was not repealed when section 2 of article 12 of the constitution was amended in 1906, under *Bank v. Laughlin,* 111 Kan. 520, 207 Pac. 433. The question then is, Is a trust company a banking corporation within the meaning of the exception contained in section 2 of chapter 152 of the Laws of 1903? It appears that when the trust company act was first passed there was intended to be and was a clear and distinct difference between a bank and a trust company, notwithstanding both had some common powers.

In support of his contention appellant cites *Johnson v. Eddy,* 138 Kan. 705, 27 P. 2d 283, in which appears the following:

"In some respects the powers of a state bank and a trust company are common, and in other respects similar, as a reference to the banking laws (R. S. 9-101 *et seq.*) and trust company laws (R. S. 17-2001 *et seq.*), both as amended, will show." (p. 712.)

In that case we were concerned only with the power of the trust company to make a valid pledge of assets to secure a public deposit, the opinion being summed up as follows:

"Under the findings of fact, it is clear that in receiving public deposits and in giving security therefor the trust company was acting in the same manner as though it were a bank, and our conclusion is that at least under these circumstances it was so far a bank that its giving of security by delivery of the notes . . . was a lawful act, binding on the trust company and on its receiver." (p. 713.)

Appellant also relies on *State of Kansas v. Hays,* 62 F. 2d 597, holding that appellant was so far a banking corporation that it was not subject to the bankruptcy laws of the United States.

In determining, however, whether a trust company, by virtue of having some powers which are the same as or similar to those conferred on banks, is so far a banking corporation that the provision in the banking law with respect to stockholders' liability is likewise binding on stockholders in a trust company, requires consideration of not only those provisions in the trust company act making certain provisions in the banking law applicable, but of other provisions of the trust company act and of the banking act. An examination of the trust company act (Laws 1901, ch. 407) as it existed when the stockholder's liability repealing act (Laws 1903, ch. 152) was passed, shows in brief that trust companies, in addition to certain trust

powers, were authorized to loan money on real estate, chattel, collateral or personal security, to issue their notes, etc., payable at a future date, and to pledge securities as security therefor, under certain limitations as to amount, to deal in certain classes of securities, and "to receive deposits of money from any bank, savings bank, trust company, or from any public officer or board, subject to check, or from any person, company, corporation or association upon time certificates of deposit, and to allow interest on such deposits; to buy and sell foreign or domestic exchange, gold, silver, foreign coin, or bullion," all of which powers are common to banks. The amount of its reserves was set. It had no power to accept private deposits, subject to check, nor to do many of the acts usually associated with banking. Section 13 of the act put trust companies under the supervision of the bank commissioner; section 14 made certain provisions of the banking law with respect to. making and publishing reports, complying with requirements of the banking commissioner, misconduct, embezzlement, false entries in books, receiving deposits when insolvent, apply to trust companies; and section 15 stated that the provisions of the banking law relating to impairment of capital and insolvency and the duties of the bank commissioner in such case were applicable to trust companies. Section 16 reads as follows:

"In the absence of any provisions in this act, the provisions of the general corporation act shall apply to corporations organized hereunder: *Provided,* That trust companies shall not be required to make reports to the secretary of state."

And section 17 made it an·offense "for any corporation in the state of Kansas to engage in the business of a trust company as defined herein, *except so far as banks are engaged in this business,* without complying with all the provisions of this act," etc.

It will be observed that the provisions of the trust company act making parts of the banking act applicable refer solely to supervisory duties of the bank commissioner, or in aid thereof, even section 14, prescribing penalties, being for the purpose of enforcing honest administration of the trust company's affairs by its officers; they did not make a trust company a banking corporation. A further distinction between banks and trust companies may also be noted. Prior to 1903 the capital stock of a bank could be as low as $5,000 (Laws 1897, ch. 47, § 2), but under section 1 of chapter 68 of the Laws of 1903, the minimum was fixed at $10,000, and banks having a

smaller capital were required within two years to increase it to that amount. Trust companies were always required to have a paid-up capital of $100,000 (Laws 1901, ch. 407, § 4). At common law the liability of a stockholder was limited to the par value of his stock. While our statute (R. S. 77-109) provides that statutes in derogation of the common law are to be liberally construed to promote their object, that cannot be held to mean that because the trust act made provisions in the bank act with reference to impairment of capital and insolvency and the duty of the bank commissioner in respect thereto applicable to trust companies, that double liability provided in another and distinct section of the bank act was likewise included, and especially is this the case in view of section 16, which provides that in the absence of any provision in the trust act the provisions of the general corporation act shall apply. R. S. 9-138 states that any corporation doing certain things "shall be considered as doing a banking business." It does not say that such a corporation is a bank or a banking corporation. Even though the statute is entitled to a liberal interpretation, we are not warranted in reading something into it that does not exist, and this is especially true in view of the fact that the legislature in 1931, by chapter 152, amended the trust company act and made the provision in the bank act relating to shareholders' liability applicable to trust companies. With respect to this latter act, we cannot agree with appellant's contention that it is not new legislation but merely a legislative declaration of what had been the law since 1901. The trust company act is silent as to stockholders' liability, and it must be held that liability is fixed under the general corporation act. When in 1903 the legislature repealed the double liability of stockholders of general corporations, it had the effect of repealing the double liability of stockholders of a trust company. The exceptions in the repealing act with reference to banking corporations meant banks organized under the statute now appearing as R. S. 9-101 et seq.

In view of the constitutional provisions as to stockholders' liability and the statutory history of the bank act, the trust company act and general corporation act, as affecting liability of stockholders, we hold that the reference in the trust company act making parts of the bank act applicable and giving the bank commissioner supervision over trust companies did not make a stockholder in a trust company liable to the stockholder's liability as defined in the bank act (R. S. 9-110), and further, that a trust company is not a banking

corporation within the purview of section 2 of chapter 152 of the Laws of 1903; that by reason of section 1 of that act the original double liability of shareholders of general corporations, including trust companies, was repealed, and that such double liability did not exist after March 17, 1903 (effective date of the above act), until the enactment of section 1 of chapter 152 of the Laws of 1931 (R. S. 1931 Supp. 17-2015).

3. The remaining question is: Does R. S. 1931 Supp. 17-2015 (Laws 1931, ch. 152), effective February 14, 1931, have retrospective force so that holders of stock issued prior to its enactment are subject to double liability?

Under the allegations of one cause of action, it appears that on November 2, 1931, the defendant surrendered a certificate of stock for forty-nine shares issued March 3, 1926, in order that two shares might be issued to a third person, a new certificate for forty-seven shares being issued to the defendant. We are not here concerned with the two shares evidenced by the certificate issued to the purchaser. It requires no citation of authority to show that as to the remaining forty-seven shares defendant's position was just the same as it had been from the date of the issue of the original certificate to him. The issuance of the new certificate did not change his liability as to the forty-seven shares, and he stands with respect to them in the same position as with respect to the shares mentioned in the other causes of action.

On behalf of the appellant it is urged that the 1931 statute has a retrospective operation. Appellee answers that the statute is not open to that construction, but if it be so construed, it violates chapter 1 of section 10 of article 1 of the constitution of the United States, which recites in part:

"No state shall . . . pass any . . . law impairing the obligation of contracts."

In *Dartmouth College v. Woodward,* 4 Wheat. 518, 4 L. Ed. 629, it was held that the charter of a private corporation is a contract between the state and the incorporators and within the provisions of the constitution prohibiting legislation impairing the obligation of contracts; that whatever is granted is secured, subject only to the limitations and reservations in the charter or in the laws or constitution which govern it. And see *Whitman v. National Bank of Oxford,* 176 U. S. 559, 44 L. Ed. 587, where, in an opinion by Mr.

Justice Brewer, section 2 of article 12 of the Kansas constitution and many cases from this court are discussed, and *Little v. Kohn*, 185 Fed. 295, where the Kansas cases are discussed. And in the early case of *Sturges v. Crowninshield*, 4 Wheat. 122, 4 L. Ed. 529, it was held that the laws relating to the validity, construction, discharge and enforcement of the contract constitute the obligation and are a part of the contract, and it was held in *Knickerbocker Trust Co. v. Myers*, 133 Fed. 764, when a state statute, at the time a corporation becomes indebted, prescribes the liability of each stockholder to depositors and creditors, the liability assumed by a stockholder is in the nature of a contract with prospective creditors, and cannot, as such, be impaired in any essential particular by state legislation. (See, also, *Hill v. Merchants Ins. Co.*, 134 U. S. 515, 33 L. Ed. 994; *Pinney v. Nelson*, 183 U. S. 144, 46 L. Ed. 125; *Pittsburgh Steel Co. v. Baltimore Eq. Soc.*, 226 U. S. 455, 57 L. Ed. 297.)

After the decision was rendered in the Dartmouth College case, many of the states amended their constitutions to reserve unto themselves the right to repeal, alter or amend the charters of corporations, and where the constitution contains such a provision, grants thereunder are wanting in that attribute of irrevocability which is essential to bring them within the inhibitions of the above clause of the United States constitution. (See *Northern Central Ry. Co. v. Maryland*, 187 U. S. 258, 47 L. Ed. 167; *Hammond Packing Co. v. Arkansas*, 212 U. S. 322, 53 L. Ed. 530; *Great Northern Railway v. Minnesota*, 216 U. S. 206, 54 L. Ed. 446; and see note to *Greenwood v. Union Freight Co.*, 26 L. Ed. 961.)

We now turn to the instant case. The trust company was incorporated in 1925, at which time our constitution read, at it does now:

(Art. 12, sec. 1.) "The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; *but all such laws may be amended or repealed.*"

(Art. 12, sec. 2.) "Dues from corporations shall be secured by the individual liability of the stockholders to the amount of the stock owned by each stockholder, *and such other means as shall be provided by law.* . . ." (Italics ours.)

Section 1 above has never been changed since the adoption of our constitution; section 2 was adopted in 1906, and amended a previous section which imposed a double liability. As has been heretofore noticed, it was held in *Bank v. Laughlin*, 111 Kan. 520, 207 Pac.

433, the amendment did not repeal the provision of the banking act imposing double liability on shareholders in banking corporations.

This court has held in a number of cases, among which are *Watkins v. Glenn,* 55 Kan. 417, 40 Pac. 316; *Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331; *Stocker v. Davidson,* 74 Kan. 214, 86 Pac. 136; *Henley v. Myers,* 76 Kan. 736, 93 Pac. 173 (affirmed 215 U. S. 373, 54 L. Ed. 240); *Walterscheid v. Bowdish,* 77 Kan. 665, 96 Pac. 56, that the statutory liability of a stockholder to pay the debts of a corporation is one arising on contract, and it has likewise held, following the decisions of the United States supreme court, that any subsequent law which so affects the remedy as substantially to impair and lessen the value of the contract is forbidden by section 10 of article 1 of the United States constitution. (See *Watkins v. Glenn,* supra.)

Although it might well be held that under our constitutional provisions, under the reservation of power therein contained, the legislature would have power to enact a statute which would relate back and have retrospective force, it is not necessary here that the question of reserved power be considered.

Appellant's contention rests on R. S. 1931 Supp. 17-2015 (Laws 1931, ch. 152, § 1), which, for our purposes, is quoted as follows:

"The provisions of the banking law relating to . . . shareholders' liability . . . shall also apply to trust companies."

Reference has been made above to the provision of the banking law, which provides for double liability.

Was it intended by such enactment that it have a retrospective force and effect and entail a double liability on shareholders who had become owners of stock in a trust company prior to the date of enactment?

In defining retrospective statutes and the rule with respect thereto, it is said in 25 R. C. L. 785 *et seq.* (title "Statutes"):

"A retrospective law, in the legal sense, is one which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability in respect of transactions or considerations already past. It may also be defined as one which changes or injuriously affects a present right by going behind it and giving efficacy to anterior circumstances to defeat it, which they had not when the right accrued, or which relates back to and gives to a previous transaction some different legal effect from that which it had under the law when it occurred. A retrospective law may be further defined as one intended to affect transactions

which occurred, or rights which accrued, before it became operative, and which ascribes to them effects not inherent in their nature, in view of the law in force at the time of their occurrence. A statute does not operate retroactively from the mere fact that it relates to antecedent events. . . .

"Purely retrospective laws involve the exercise of judicial rather than strictly legislative power. Operating not only on future rights and liabilities, but also on matters that occurred, or rights and liabilities that existed, before the time of enactment, they pronounce judgment on what was done before their enactment. Every law that takes away or impairs rights that have vested under existing laws is generally unjust and may be oppressive. Hence such laws have always been looked on with disfavor. It is a maxim, which is said to be as ancient as the law itself, that a new law ought to be prospective, not retrospective, in its operation . . . The objection to retroactive legislation has also been expressed in the maxim, . . . 'laws which are retrospective are rarely and cautiously received, for Janus has really no place in the laws.' The American constitutions have invariably imposed limitations on this class of legislation. While the constitution of the United States and the constitutions of many of the states contain no provisions directly forbidding retrospective laws, such laws are void if they impair the obligation of contracts or vested rights. Even though the legislature may have the power to enact retrospective laws, a construction which gives to a statute a retroactive operation is not favored, and such effect will not be given unless it is distinctly expressed or clearly and necessarily implied that the statute is to have a retroactive effect. There is always a presumption that statutes are intended to operate prospectively only, and words ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied. Every reasonable doubt is resolved against a retroactive operation of a statute. If all of the language of a statute can be satisfied by giving it prospective action only that construction will be given it. Especially will a statute be regarded as operating prospectively when it is in derogation of a common-law right, or the effect of giving it retroactive operation will be to destroy a vested right or to render the statute unconstitutional. . . .

"The rule that statutes are to be given a prospective rather than a retrospective operation, like other rules of interpretation, is resorted to to give effect to the presumed and reasonably probable intention of the legislature, when the terms of the statute do not of themselves make the intention certain or clear, and cannot be invoked to change or defeat the intention when it is made obvious or manifest by the terms of the statute. It is sometimes held that the intent favoring retrospective application must affirmatively appear in the words of the statute. The better rule of construction, and the rule peculiarly applicable to remedial statutes, however, is that a statute must be so construed as to make it effect the evident purpose for which it was enacted; and if the reason of the statute extends to past transactions as well as to those in the future, then it will be so applied, although the statute does not in terms so direct, unless to do so would impair some vested right or violate

some constitutional guaranty. Where the language of an act plainly makes it applicable to past acts and transactions, it must be given a retrospective operation, even though it thereby becomes invalid because it conflicts with constitutional prohibitions of retrospective legislation, the impairment of contracts, or the disturbing of vested rights."

And the subject is further treated in 6 R. C. L. 303, "Constitutional Law." (See, also, 59 C. J., "Statutes," 1159 *et seq.;* 14 C. J., "Corporations," 974 *et seq.;* 12 C. J., "Constitutional Law," 1084 *et seq.*)

The question of whether a statute should be retrospectively or prospectively construed was before this court in *Douglas Co. v. Woodward,* 73 Kan. 238, 84 Pac. 1028, and it was held:

"Generally, a statute will be construed as applying to conditions that may arise in the future. An act will not be given a retrospective operation unless the intention of the legislature that it shall so operate is unequivocally expressed." (Syl. ¶ 1.)

The rule was followed in *Lightner v. Insurance Co.,* 97 Kan. 97, 154 Pac. 227, a case involving a construction of the insurance laws, which, if given retrospective operation, would have resulted in the impairment of a contract. It was likewise followed in *State v. Trust Co.,* 99 Kan. 841, 843, 163 Pac. 156, involving the inheritance tax law of 1915, in which it was said:

"It seems clear that the legislature intended that this statute was to operate prospectively. That would ordinarily follow, not because a retroactive effect could not be given, but that such construction is never given unless the legislative intent to do so is clear and unequivocal." (Citing cases.) (p. 843.)

In *Gaston v. Clabaugh,* 106 Kan. 160, 186 Pac. 1023, it was said that "the presumptions are against retroactive intentions unless they are clearly expressed."

Later decisions to the same effect are *Bailey v. Baldwin City,* 119 Kan. 605, 240 Pac. 852, holding that "where a statute is open to two interpretations, one of which would invalidate and the other uphold it, the court, if it is reasonably possible, should give it the latter construction"; *Serrault v. Price,* 125 Kan. 548, 551, 265 Pac. 63; *Thompson v. Reno Co. Comm'rs,* 127 Kan. 863, 865, 275 Pac. 205; *Almquist v. Johnson,* 130 Kan. 417, 420, 286 Pac. 200; *Bluff City v. Western Power & Light Corp.,* 137 Kan. 169, 180, 19 P. 2d 478.

It is not necessary that we repeat the reasoning set forth in the foregoing authorities, but following out such reasoning it is clear

that the statute making the provisions of the banking law relating to shareholders' liability apply to trust companies contains no language indicating it was to have any retrospective force and effect, and lacking such language, the presumption is that it was intended only to be effective prospectively, and it is held, therefore, that the act had no retrospective force or effect.

It follows, therefore, that the ruling of the trial court on appellant's demurrer was correct, and its judgment is affirmed.

HARVEY and SMITH, JJ., dissenting.